**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **COMPOUND PROPERTY** ) | Case No. 1:19-cv-00133-MRB |
| **MANAGEMENT, LLC, *ET AL.*** ) | |
| ) | JUDGE MICHAEL R. BARRETT |
| Plaintiffs, ) | |
| ) | **DEFENDANTS' PARTIAL MOTION** |
| vs. ) | **TO DISMISS PLAINTIFFS'** |
| ) | **COMPLAINT** |
| **BUILD REALTY, INC., *ET AL.*** ) | |
| ) | |
| Defendants. ) | |

Under Fed. R. Civ. P. 12(b)(6), Defendants Build Realty, Inc., Edgar Construction, LLC, Cincy Construction, LLC, McGregor Holdings, LLC, Cowtown Holdings, LLC, Build NKY, LLC, Greenleaf Support Services, LLC, Build SWO, LLC, Gary Bailey (individually and as Trustee), George Triantafilou (individually and as Trustee), G2 Technologies, LLC, GT Financial, LLC, and Stephen D. King partially move to dismiss Plaintiffs Compound Property Management, LLC, Leone1, LLC, and R&G Cincy Investments, LLC's (collectively, "Plaintiffs") Complaint. (Doc. 1).

As set forth in the accompanying Memorandum in Support, Plaintiffs do not state a RICO (Count I), civil conspiracy (Count III), unjust enrichment (Count IV), or declaratory judgment claim (Counts V, VI, & VII) on which relief can be granted. For starters, there is a parallel state litigation going on involving the same putative class, such that this Court should abstain from entertaining the present action at all.

On the merits, this is Plaintiffs' sixth attempted pleading in the more than two years since this litigation was commenced in Ohio state court in February 2017. Plaintiffs distort federal RICO, conjuring that claim to challenge a real estate investment business model that has allowed hundreds of investors to profit over the years. That the

three named Plaintiffs defaulted on their promissory note obligations and subsequently lost money in the investment does not render Defendants liable for anything, much less the sensationalized RICO claims Plaintiffs pose.

Specifically, the RICO and conspiracy claims in Counts I and III do not pass muster under Fed. R. Civ. P. 9(b)'s particularity requirement. Indeed, Plaintiffs do not adequately plead the existence of either an enterprise, a distinct RICO injury, or proximate cause. Any one of those standing alone is fatal. Moreover, even if there is any cognizable RICO claim which proceeds, that claim must be dismissed against G2 Technologies, LLC and Gary Bailey, George Triantafilou, and Stephen King individually. There are no factual allegations that would subject any of them to any liability, RICO or otherwise.

The unjust enrichment claim in Count IV must be dismissed because a series of written, signed agreements already covers the same subject matter.

Finally, the declaratory judgment claims in Counts V, VI, and VII are defective. The rights of redemption and to excess proceeds do not apply here. Plaintiffs are neither the mortgagors nor title holders. Likewise, there can be no voiding of the underlying trust transactions unless Plaintiffs, including the hundreds of putative class members who have profited handsomely, return the consideration they received in exchange. Of course, no one has offered to do that.

Finally, and at the very least, the Court should strike Plaintiffs' jury demand. Plaintiffs waived the right to a jury across numerous documents they signed.

Respectfully submitted,

**/s/ Alex M. Triantafilou**
Alex M. Triantafilou, Esq. (0066311)
Richard D. Porotsky, Jr., Esq. (0067234)
Bryan E. Pacheco, Esq. (0068189)
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax: (513) 977-8141
alex.triantafilou@dinsmore.com
richard.porotsky@dinsmore.com
bryan.pacheco@dinsmore.com

*Attorneys for Defendants Build Realty, Inc.,*
*Edgar Construction, LLC, Cincy Construction,*
*LLC, McGregor Holdings, LLC, Cowtown*
*Holdings, LLC, Build NKY, LLC, Greenleaf*
*Support Services, LLC, Build SWO, LLC, Gary*
*Bailey individually and as Trustee, George*
*Triantafilou individually and as Trustee, G2*
*Technologies, LLC, GT Financial, LLC, and*
*Stephen D. King*

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **COMPOUND PROPERTY MANAGEMENT, LLC,** *ET AL.* ) | Case No. 1:19-cv-00133-MRB |
| ) | |
| ) | JUDGE MICHAEL R. BARRETT |
| Plaintiffs, ) | |
| ) | **DEFENDANTS' MEMORANDUM** |
| vs. ) | **IN SUPPORT OF MOTION TO** |
| ) | **DISMISS** |
| **BUILD REALTY, INC.,** *ET AL.* ) | |
| ) | |
| Defendants. ) | |

## TABLE OF CONTENTS

**I.** **INTRODUCTION AND ALLEGED FACTS** ................................................................1

**II.** **LAW AND ARGUMENT** .............................................................................................. 6

    **A. RICO** ............................................................................................................... 6

        **i.** RICO elements .................................................................................. 7

            **1.** *Smith v. ABN AMRO Mortg. Group., Inc.*, No. 1:06cv45, 2007 U.S. Dist. LEXIS 26585 (S.D. Ohio Mar. 27, 2007)

            **2.** *Readnour v. Berry*, No. 1:15-cv-3, 2015 U.S. Dist. LEXIS 25092 (S.D. Ohio Feb. 6, 2015)

        **ii.** Plaintiffs have not adequately alleged the requisite enterprise ........ 9

The enterprise must be an entity separate and apart from the pattern of activity in which it engages. Further, an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself. Boiled down, that is all Plaintiffs allege.

            **1.** *Flanagan v. Eden*, No. 85252, 2005-Ohio-3133 (Ohio Ct. App. June 23, 2005)

            **2.** *Javitch v. Capwill*, 284 F. Supp. 2d 848 (N.D. Ohio 2003)

            **3.** *Begala v. PNC Bank, Ohio*, 214 F.3d 776 (6th Cir. 2000)

            **4.** *Pineda Transp., LLC v. FleetOne Factoring, LLC*, No. 3:18-cv-0089, 2018 U.S. Dist. LEXIS 78215 (M.D. Tenn. May 9, 2018)

            **5.** *In re Reciprocal of Am. Sales Practices Litig.*, No. MDL 1551, 2006 U.S. Dist. LEXIS 71808 (W.D. Tenn. Sept. 29, 2006)

            **6.** *Dixon v. Huntington Natl. Bank*, No. 100572, 2014-Ohio-4079 (Ohio Ct. App. Sept. 18, 2014)

**7.** *Cooke v. AT&T Corp.*, No. 05-cv-374, 2007 U.S. Dist. LEXIS 20936 (S.D. Ohio Mar. 23, 2007)

**8.** *Johnson v. United States Bank Natl. Assn.*, No. 1:09-cv-492, 2010 U.S. Dist. LEXIS 153047 (S.D. Ohio May 12, 2010)

**9.** *City of Cleveland v. Woodhill Supply, Inc.*, 403 F. Supp. 2d 631 (N.D. Ohio 2005)

**iii.** <u>Plaintiffs have not adequately alleged a RICO injury or proximate causation</u> ..........................................................................................14

**1.** *No injury* ..............................................................................14

Plaintiffs do not plead a cognizable RICO injury because at most, they were deprived of mere expectancy interests – namely, to profit from their rehab investment. The law does not provide a remedy for such speculative expectancy interests.

**a.** *Lewis v. Drouillard*, 788 F. Supp.2d 567 (E.D. Mich. 2011)

**b.** *Short v. Janssen Pharm., Inc.*, No. 1:14-CV-1025, 2015 U.S. Dist. LEXIS 61123 (W.D. Mich. May 11, 2015)

**c.** *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 U.S. Dist. LEXIS 148298 (W.D. Tenn. May 18, 2010)

**2.** *No causation* ........................................................................15

There is no proximate causation between the underpinning of Plaintiffs' fraud claim and the (non-existent) injury because Plaintiffs did not rely on any misrepresentations by Build. Instead, those purported misrepresentations were made to third-parties, which Plaintiffs had nothing to do with.

**a.** *Quade v. Rodriguez*, E.D. Tenn. No. 2:07-CV-64, 2009 U.S. Dist. LEXIS 62802 (July 21, 2009)

**b.** *In re Reciprocal of Am. Sales Practices Litig.*, No. MDL 1551, 2006 U.S. Dist. LEXIS 71808 (W.D. Tenn. Sept. 29, 2006)

**iv.** <u>There is no hook for individual liability against Gary Bailey, George Triantafilou, or Stephen King, or against G2 Technologies, LLC</u> ... 19

There are no allegations sufficient to impose liability against G2 Technologies, LLC. Its only involvement is that it has an option to purchase Build. That is not enough, nor do Plaintiffs cite any authority for such an expansive proposition. Likewise, there are insufficient factual allegations to name Gary Bailey, George Triantafilou, or Stephen King individually as Defendants.

**1.** *Johnson v. United States Bank Natl. Assn.*, No. 1:09-cv-492, 2010 U.S. Dist. LEXIS 153047 (S.D. Ohio May 12, 2010)

      **2.** *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505 (6th Cir. 1991)

      **3.** *Lincoln Elec. Co. v. Manahan*, No. 1:10 cv 00724, 2011 U.S. Dist. LEXIS 89169 (N.D. Ohio Aug. 11, 2011)

      **4.** *Williamson v. Ocwen Loan Servicing, LLC*, No. 3:09-0514, 2009 U.S. Dist. LEXIS 119509 (M.D. Tenn. Dec. 23, 2009)

## B. Civil Conspiracy ...................................................................................... 19

The common law conspiracy claim must be dismissed because, like the RICO claims, the allegations are conclusory and do not support the inference of any malicious agreement by the Defendants to conspire and to injure Plaintiffs.

      **i.** *Dixon v. Huntington Natl. Bank*, No. 100572, 2014-Ohio-4079 (Ohio Ct. App. Sept. 18, 2014)

      **ii.** *Neterkeht v. Longworth*, No. 1:12-cv-695, 2013 U.S. Dist. LEXIS 99788 (S.D. Ohio July 17, 2013)

      **iii.** *Darling v. Lake Cnty. Bd. of Commrs.*, No. 1:12 CV 194, 2012 U.S. Dist. LEXIS 72978 (N.D. Ohio May 25, 2012)

      **iv.** *In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp.2d 775 (N.D. Ohio 2007)

## C. Unjust Enrichment .................................................................................21

There can be no unjust enrichment claim where the subject matter is governed by a written contract. Here, there admittedly are seventeen such agreements.

      **i.** *Great Water Capital Partners, LLC v. Down-Lite Intl., Inc.*, No. C-150015, 2015-Ohio-4877 (Ohio Ct. App. Nov. 18, 2015)

      **ii.** *Bartell v. LTF Club Operations Co.*, No. 2:14-cv-00401, 2015 U.S. Dist. LEXIS 49084 (S.D. Ohio Apr. 14, 2015)

      **iii.** *DavCo. Acquisition Holding, Inc. v. Wendy's Intl., Inc.*, No. 2:07-cv-1064, 2008 U.S. Dist. LEXIS 27108 (S.D. Ohio Mar. 19, 2008)

## D. Declaratory Judgment on Right to Redeem and Excess Proceeds

............................................................................................................................22

The rights to redeem and to excess proceeds do not apply where the plaintiff is not the mortgagor or title owner of the property. Plaintiffs are neither the mortgagors nor the title owners. Plus, they have not pled that they could actually redeem if they wanted to. Instead, they voluntarily walked away from their promissory note obligations, without consequence.

      **i.** R.C. 2329.33

      **ii.** K.R.S. 426.530

      **iii.** R.C. 5723.11

      **iv.** K.R.S. 426.500

      **v.** *Whipps v. Ryan*, No. 14AP-67, 2014-Ohio-5302 (Ohio Ct. App. Nov. 28, 2014)

**vi.** *JDI Murray Hill, LLC v. Flynn Props., LLC*, No. 94259, 2011-Ohio-301 (Ohio Ct. App. Jan. 27, 2011)

**E. Declaratory Judgment that Trusts are Void** .................................... 26

Plaintiffs cannot rescind the transactions without returning the consideration they received.

**i.** *Barnes v. Reserve Energy Exploration*, No. 14 BE 0013, 2016-Ohio-4805 (Ohio Ct. App. June 28, 2016)
**ii.** *Gleich v. St. Andrew Sch.*, No. 2:10-cv-894, 2011 U.S. Dist. LEXIS 113176 (S.D. Ohio Sept. 30, 2011)
**iii.** *Fenix Ents. v. M&M Mtge. Corp.*, 624 F.Supp.2d 834 (S.D. Ohio 2009)
**iv.** *Yanik v. City of Silverton*, No. C 090707 (Ohio Ct. App. June 16, 2010)
**v.** *Painesville Twp. Bd. of Trustees v. City of Painesville*, No. 97-L-090, 1998 Ohio App. LEXIS 2942 (Ohio Ct. App. June 26, 1998)

**F. The Court Should Strike Plaintiffs' Jury Demand** ......................... 27

Plaintiffs waived the right to a jury trial in three separate agreements. That waiver is clear and unambiguous, and as such should be enforced.

**i.** *Jones v. U-Haul of Mass. & Ohio*, 16 F. Supp. 3d 922 (S.D. Ohio 2014)
**ii.** *Aracri v. Dillard's, Inc.*, No. 1:10-cv-253-MRB, 2011 U.S. Dist. LEXIS 41596 (S.D. Ohio Mar. 29, 2011)
**iii.** *Blurton v. Fesmire*, 266 B.R. 827 (W.D. Tenn. 2001)
**iv.** *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc.*, 528 F. Supp.2d 710 (E.D. Mich. 2007)
**v.** *Martorella v. Deutsche Bank Natl. Trust Co.*, No. 12-80372-CIV, 2013 U.S. Dist. LEXIS 36886 (S.D. Fla. Mar. 18, 2013)
**vi.** *PNC Equip. Fin., LLC v. Aero Toy Store, LLC*, No. 1:12-cv-236, 2012 U.S. Dist. LEXIS 115532 (S.D. Ohio Aug. 16, 2012)

**III.  CONCLUSION** ................................................................................................... 30

## I.    INTRODUCTION AND FACTUAL ALLEGATIONS

This case was first brought in Ohio state court in February 2017. The present pleading represents Plaintiffs' sixth complaint. Though their allegations are ever-changing, the underlying theme remains as deficient today as it was over two years ago. Plaintiffs paint Defendants' business model as a pervasive, fraudulent scheme. They claim it's designed to swindle unsophisticated consumers out of their retirement savings and to kick them out of their personal residences without recourse, in violation of several Ohio (and now Kentucky) laws. Citing no one and no evidence in particular, Plaintiffs say Defendants have been ripping people off for years, "many Investors make little or no profit," and most "lose upwards of $20,000" while transacting business with Defendants. (Doc. 1 at PageID # 7).

The truth is much more inconvenient for Plaintiffs – the purported representatives of a class of hundreds of investors who have collectively sold the properties they were able to acquire as a result of Defendants' innovative business model for millions of dollars. The named Plaintiffs are simply three who have defaulted on their undisputed, non-recourse loan obligations. But they were permitted, and even voluntarily chose, to walk away with no adverse consequences.

### A.    Defendants finance and structure hard money, nonrecourse loans to allow investing LLCs to partake in the rehab housing market.

Defendants Build Realty, Inc. ("Build"), Edgar Construction, LLC ("Edgar"), Cincy Construction, LLC, McGregor Holdings, LLC, Cowtown Holdings, LLC, Build SWO, LLC, Build NKY, LLC, and Greenleaf Support Services, LLC (collectively, the "Build Entities") purchase distressed properties. Then, they offer a unique form of

rehab financing that allows limited liability company investors, ***not*** residential consumers, to obtain funds to both (1) purchase the house, and (2) to make the repairs needed to rehab the property and to ultimately try to sell it for a gain. (Doc. 1 at PageID ## 4-5, 21-27). Plaintiffs color these factual allegations with sensationalized themes of conspiracy and forgery because they are unhappy they lost money. But, Defendants' business model complies with all applicable laws. And, at the end of the day, like any other investment model, it is not a risk-free treasury bond.

This "hard money loan" is not offered by traditional lenders. Nor is the advantage guaranteed to every LLC that invests: the loans are ***non-recourse***. So, in the event a property – the only collateral securing the loans – is taken back on default, neither the LLC investors, nor the individuals who form them, risk any personal liability. This means that, despite signing a promissory note[1] and incurring a six-figure repayment obligation, at any point, an investor can choose to walk away (i.e. – to breach its promise to pay) without penalty, owe nothing more on the loan, duck any personal liens or attendant consequences that a bad debt or court judgment would have on a credit score, and avoid the time and expense that accompanies a foreclosure action for the typical home loan and mortgage that go into default (including paying any deficiency judgment).

     B.    <u>The investors sign numerous documents allowing the properties to be held in trust for the benefit of separately formed limited liability companies.</u>

To effectuate these benefits, Build, or one of its affiliated companies, acquires a property and sells it to Edgar Construction as trustee for the benefit of the LLC investor.

---

[1] Plaintiffs complain that Build "requires" investors to sign a promissory note. (*E.g.*, Doc. 1 at PageID # 9, ¶ 21 ("CPM was unable to continue to make interest payments to Build pursuant to the promissory note that Build required it to sign . . . .")). Yes – in exchange for loaning money to investors, often hundreds of thousands of dollars, Build expects a promise to repay.

As a result, the individuals who form the LLCs do not take direct title to the property. (Id. at PageID ## 5, 28-30). The benefits are obvious. The LLCs do not bear, or risk, any personal responsibility or liability for the promissory notes signed to acquire the financing. (*Id*.).

Interestingly, Plaintiffs spin this structure – and specifically Build's policy only to lend to and work with investors which are properly formed LLCs – as an impermissible runaround of Ohio and Kentucky "usury laws, mortgage protection laws, and other statutory protections." (*E.g*., *id*. at PageID ## 5-6, 27). So, Plaintiffs acknowledge that such laws do not apply to, much less prohibit, Build's business model.

Indeed, in the nearly two years this case has been pending, Plaintiffs have not cited a single authority holding this business model – loaning money to LLC investors in exchange for holding the property in trust for their benefit conditioned only on them meeting their loan repayment obligations – unlawful.

Additionally, though Plaintiffs claim the statutory rights of redemption and to excess proceeds are violated, those rights *only belong to a mortgagor who holds title to a property*. Admittedly, the LLC investors (the existing and purported plaintiffs) here do not. The trust structure here complies with the law – all the while offering investors access to risk-free capital, with no accompanying personal liability.

C. <u>The majority of investing LLCs have profited. The minority that default walk away with no responsibility, leaving Build on the hook for everything.</u>

Plaintiffs misrepresent that "the vast majority of Investors lose money, in many cases their entire investment." (*Id*. at PageID # 4). Although factual allegations must be presumed true at this stage, in actuality only the vast *minority* of the nearly 450 transactions have resulted in default on the accompanying loans. Most investors have

3

succeeded, selling the properties they acquired for a gain. Many are repeat customers, electing to participate time and again in subsequent deals with Build.

The inconvenient truth for Plaintiffs is that their theory is based on a false premise: that Build deliberately overinflates the after-repair-value ("ARV") of a property to lure unsuspecting residential consumers into making an investment, with the implicit purpose of having those consumers default on the subsequent loans. Then, Build immediately takes the property back and sells it for a massive gain at the consumers' expense. The facts tell a much different story:

- Plaintiffs are not residential consumers but limited liability company investors formed under Ohio law;

- Build explains the LLC and trust structure to the investors from day one;

- Very few investors default or lose money. Most investors profit, highlighted by the fact that many LLC investors are repeat customers; and

- In the majority of cases, when the investor wins, Build wins. When the investor loses, Build loses – at an exponential multiple to that of the investor.

This last point is perhaps the most crucial, obliterating the central theme spun by Plaintiffs. As Plaintiffs note, after Build and an LLC investor finalize the respective contract and closing documents, Build often sells the notes in packages to institutional lenders such as SGIA Residential Bridge Loan Venture V LP. (*Id.* at PageID ## 37-38). That does not change the investors' rights or obligations, nor do Plaintiffs allege otherwise. Instead, Build thereafter services the notes.

In practice, however, this means if an investor does not pay, or otherwise defaults, Build must step in and make the ongoing interest and principal payments directly to the institutional lender. With that obligation also comes the attendant burden to make sure the properties do not become nuisances or blighted under

4

applicable municipal ordinances.  Thus, when an investor defaults and eventually chooses to walk away (such as each of the named Plaintiffs here), Build must resume the note payments, assume the rehab obligations, and try to sell the property at its own risk, with no right to seek reimbursement from the defaulting investor.  The respective risk to Build and its investors is asymmetrical – in favor of the investors.  The investors risk just their $10,000 initial payment, while Build risks the hundreds of thousands of dollars loaned.  Build is also saddled with abating a typically underperforming property.

In very few default cases, Build has sold such properties for a profit.  But most of the time in cases of default, Build sustains substantial losses.[2]  Meanwhile, because of the unique advantages this structure offers, the investors walk away scot-free.  They forfeit only their down payment, interest payments, and rehab funds spent along the way which were not previously reimbursed.  But there is no foreclosure process.  No lawsuit.  No court judgment for the balance of the note.  No liens against their individual assets.  And, no impact on their credit score.  Because Build assumes everything else, taking a property back is the absolute last resort.  In practice, Build gives investors numerous chances to catch up; to make smaller, intermediate payments; and even to defer interest.

Struggling with stubborn facts about the success experienced by most investors, Plaintiffs are three LLCs that have defaulted and are willing to partake in this lawsuit.

---

[2] This will be an issue for class certification – the typicality required for a class action is missing in numerous respects.  In fact, among the 40 or so properties that Build has accepted back from investors, it has collectively lost approximately $1.4 **million**.  Thus, Plaintiffs' theory is not even a sustainable business model, much less the coda for the unlawful "RICO conspiracy" they conjure.

The named Plaintiffs cannot adequately represent the expansive putative class they propose either.  Indeed, now, putative class members who have successfully rehabbed their respective properties are unable to sell the properties to third-parties.  The title insurers now refuse to insure title given the sensationalized allegations raised by Plaintiffs.  In other words, the three named Plaintiffs are now directly adverse to, and harming, other class members they purport to represent.

But these investing LLCs sign numerous documents acknowledging and agreeing to the transaction structure at the outset in exchange for the concrete advantages that the structure offers. Amazingly, Plaintiffs allege a federal RICO case – after they admittedly defaulted on their loan payments and were gratuitously permitted to walk away from their commercial investment. But RICO was not intended to be stretched in such a manner to allow every commercial dispute (and to be sure, this is a commercial dispute between investing LLCs and Defendants that provide the investment opportunity) to be transformed into a grand federal conspiracy case.

Even taking Plaintiffs' wrong factual assertions as true, as the Court must, the Court should abstain from hearing this case, or at minimum should: (1) dismiss Counts I, III, IV, V, VI, and VII for failure to state a claim on which relief can be granted and (2) strike Plaintiffs' jury demand.

## II.    LAW AND ARGUMENT

### A.  RICO – COUNT ONE

Several of Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6).[3] Plaintiffs' first and most sensationalized allegations are their federal RICO and analog

---

[3] Foundationally, the Court should abstain from hearing this case at all under the *Colorado River* abstention doctrine. Under the doctrine of abstention, a federal court may decline to exercise, or postpone the exercise of its, jurisdiction. *Mowen v. Clermont Cnty.*, No. 1:07cv323, 2008 U.S. Dist. LEXIS 10074, *19-20 (S.D. Ohio Jan. 29, 2008), citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Kornhauser v. Notting Hill, LLC*, No. 1:17-cv-00719, 2018 U.S. Dist. LEXIS 166396 (S.D. Ohio Sept. 27, 2018); *Robb v. Hudson*, No. 1:10cv285, 2010 U.S. Dist. LEXIS 106184, *5-9 (S.D. Ohio Oct. 5, 2010).

Abstention is warranted where there is a parallel state court litigation involving the same, or substantially the same, issues as the federal case, even if the parties are not identical. *Bates v. Van Buren Twp.*, 122 Fed. Appx. 803, 806-07 (6th Cir. 2004), citing *Romine v. Compuserve Corp.*, 160 F.3d 337 (6th Cir. 1998); *Kornhauser*, 2018 U.S. Dist. LEXIS 166396 at *3. The principles underlying abstention are "based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kornhauser*, 2018 U.S. Dist. LEXIS 166396 at *3, citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001).

Ohio Corrupt Practices Act claims. (Doc. 1 at PageID ## 52-77). Count One must be dismissed against all of these moving Defendants for two independent reasons: (1) Plaintiffs have not adequately alleged the existence of an "enterprise"; and (2) Plaintiffs have not adequately alleged the existence of a RICO injury.

At the very least, this claim should be dismissed against the individual Defendants – Gary Bailey, George Triantafilou, and Stephen King. The most that is pled against them is that they were acting on behalf of the entities alleged to have partaken in this conspiracy. The intra-corporate conspiracy doctrine precludes conspiracy liability against an individual when the alleged conspiracy is between him and the entity on whose behalf he is acting.

### i. RICO elements

To plead and eventually prove a RICO violation, "Plaintiffs must show (1) that there were two or more predicate offenses; (2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to his business or property by reason of the above." *Smith v. ABN AMRO Mortg. Group., Inc.*, No. 1:06cv45, 2007 U.S. Dist. LEXIS 26585, *31-32 (S.D. Ohio Mar. 27, 2007) (collecting cases); *Readnour*

---

Such considerations militate in favor of this Court abstaining here. Indeed, there is a parallel state court action involving many of the same issues – to wit, class allegations brought by former investors who participated in the transaction structure offered by Build. They have alleged, on behalf of all other investors, that Build charges investors excess fees, does not properly disclose interest rate spreads, operates the affiliated companies as alter egos of each other, and breaches its duty as trustee by taking properties back on default. (*See Build Realty, Inc. v. Sean Cole*, Case No. A1602565 at Class Action Complaint, ¶¶ 25-46). The Court can take judicial notice of such a pleading. *Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 576 (6th Cir. 2008); *Kondash v. Kia Motors Am.*, No. 1:15-cv-506, 2016 U.S. Dist. LEXIS 185184, *12 n.4 (S.D. Ohio June 24, 2016) (taking judicial notice of "a nearly-identical version of this lawsuit filed previously in California").

Most notably, those claimants made class allegations "on behalf of themselves and all persons who, as of March 16, 2017, have engaged in loan transactions with Build Realty, Inc., Build SWO LLC, and/or Edgar and have suffered losses, both known and unknown, as a result." (*Id.* at ¶ 29). Although Plaintiffs' counsel in that case has previously represented that he intends to dismiss the class claims, that has not happened yet. In fact, trial is set for October of this year.

*v. Berry*, No. 1:15-cv-3, 2015 U.S. Dist. LEXIS 25092, *6-7 (S.D. Ohio Feb. 6, 2015), citing *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2001).

Conclusory allegations, bereft of factual support, do not suffice. *See id.*; *Readnour*, 2015 U.S. Dist. LEXIS 26585 at *7 (dismissing complaint because "no factual allegations support[ed] the elements of a civil RICO cause of action"); *Lilley v. Peeler*, No. 1:15-cv-128, 2015 U.S. Dist. LEXIS 117739, *21, 38 (S.D. Ohio Aug. 10, 2015) (same). Plaintiffs' allegations exemplify such rote legal conclusions and are insufficient to state a claim for any number of reasons.

### ii. No enterprise

First, there is no cognizable enterprise here. Ohio state and federal courts have held that "an enterprise is not a pattern of racketeering activity, but must be an entity separate and apart from the pattern of activity in which it engages." *Flanagan v. Eden*, No. 85252, 2005-Ohio-3133, ¶ 14 (Ohio Ct. App. June 23, 2005) (collecting cases); *Emmet v. Franco*, No. 16-cv-11211, 2017 U.S. Dist. LEXIS 24226, *12-13 (E.D. Mich. Feb. 22, 2017) ("The hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing."); *Javitch v. Capwill*, 284 F. Supp. 2d 848, 856-57 (N.D. Ohio 2003).

Likewise, "although a corporation may be a member of an enterprise, the enterprise may not simply be composed of a corporation and its officers or employees." *Flanagan*, 2005-Ohio-3133 at ¶ 14. Thus, "an organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself." *Id.*; *accord Begala v. PNC Bank, Ohio*, 214 F.3d 776, 781 (6th Cir. 2000); *Shields v. UNUMProvident Corp.*, 415 Fed. Appx. 686, 691 (6th Cir. 2011).

Plaintiffs do not sufficiently allege an enterprise. Initially, they claim Build itself is an enterprise. (Doc. 1 at PageID # 52, ¶ 155). But as set forth above, the enterprise cannot just be Build and its own employees. Otherwise, every fraud case would turn into an expansive RICO litigation. *See also Pineda Transp., LLC v. FleetOne Factoring, LLC*, No. 3:18-cv-0089, 2018 U.S. Dist. LEXIS 78215, *14-17 (M.D. Tenn. May 9, 2018) (collecting cases and dismissing RICO claim where alleged enterprise – the entity and its employees – was not separate and apart from the illegal activities being carried out by that entity); *Smith v. Nationstar Mortg.*, No. 1:17-cv-1483, 2017 U.S. Dist. LEXIS 210536, *10-12 (N.D. Ohio Dec. 21, 2017) (same).

"Alternatively," Plaintiffs allege all Defendants collectively "acted as a group of persons associated in fact to form an enterprise." (Doc. 1 at PageID # 53, ¶ 156). But Plaintiffs do not plead sufficient facts enabling its so-called "associated-in-fact enterprise." The central inquiry here is the alleged role of each of the purported co-conspirators. Unsupported allegations about a defendant's participation in an enterprise are not enough. *E.g.*, *Kattula v. Jade*, No. 07-12569, 2008 U.S. Dist. LEXIS 12320, *12-16 (E.D. Mich. Feb. 20, 2008) (collecting cases).

Also insufficient are allegations that one person or entity suddenly becomes enmeshed in a RICO conspiracy merely by doing what it normally does. Put differently, where an alleged RICO conspirator is not performing activities separate and apart from its normal business, there is no enterprise.

The point is that the law wants to prevent every ordinary business dispute from being transformed into a sensationalized RICO case. *See*, *e.g.*, *In re Reciprocal of Am. Sales Practices Litig.*, No. MDL 1551, 2006 U.S. Dist. LEXIS 71808, *38-39 (W.D. Tenn. Sept. 29, 2006) ("RICO was not intended to federalize corporate relationships."); *Ponte*

*v. Chase Bank USA*, No. 12-cv-13901, 2013 U.S. Dist. LEXIS 155044, *27-28 (E.D. Mich. Oct. 8, 2013) (collecting cases) ("Courts have repeatedly discouraged these kinds of pleadings, noting that . . . RICO was not intended to fit a square peg in a round hole by squeezing garden variety business disputes into civil RICO actions.").

For example, in *Flanagan*, plaintiff alleged a fraudulent payment and check scheme. 2005-Ohio-3133 at ¶ 12. In affirming dismissal, the Ohio appellate court noted there were no allegations showing that each of the allegedly participating co-conspirators was engaging in anything but its normal business operations.

> There is no indication that any of the parties were performing activities which by their very nature formed an enterprise that was separate and apart from ***its normal functions***. ABC, and therefore its employees, submitted insurance claim forms and sent individual bills to patients ***as a matter of course***.

*Id.* at ¶ 15; *see also Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶¶ 38-39 (Ohio Ct. App.) (affirming dismissal because "there was no allegation suggesting that the purported association in fact between appellees acted separate and apart from the alleged predicate acts" and noting that "at most, appellants' allegations demonstrate that appellees function in their contractual roles"); *Dixon v. Huntington Natl. Bank*, No. 100572, 2014-Ohio-4079, ¶¶ 19-25 (Ohio Ct. App. Sept. 18, 2014) (there must be a "structure, continuity, and separate existence from the corrupt pattern," so where "individual defendants [are] acting in their own individual affairs," that does not constitute an enterprise).

Here, Plaintiffs similarly do not allege such a separate existence of the purported associated-in-fact enterprise. Really, all Plaintiffs say is that each of the Defendants has a business relationship with Build and transacts business with it in the normal course of its own respective operations:

- Gary Bailey manages the "Build Companies." Correct, he is the Founder of Build and a member of its executive team.

- GT Financial[4] loans money to Build. Correct, GT Financial is in the business of lending. (Doc. 1 at PageID ## 74, 76, ¶¶ 182, 189).

- Stephen King is a consultant for Build. Correct, Mr. King uses his extensive business experience to consult with Build leadership to help grow the company. (*Id*. at PageID ## 75, 77, ¶¶ 183, 190).

- The permanent lenders like SGIA Residential Bridge Loan Venture V LP ("SGIA") purchase the investors' notes and thereby lend money to the business. Correct, SGIA is in the financial services business where it routinely purchases note packages and loans money. (*Id*. at PageID ## 76-77, ¶¶ 185, 191-92).

- First Title often serves as the title company for transactions financed through Build Realty. Correct, First Title is a title company which is in the business of serving as the title agent for real estate closings. (*Id*. at ¶ 193).

In short, Plaintiffs conjure a conspiracy just because the Defendants have a business relationship and because the other "conspirators" profit in their line of business by dealing with Build. But that is not enough. *See Cooke v. AT&T Corp.*, No. 05-cv-374, 2007 U.S. Dist. LEXIS 20936, *11-12 (S.D. Ohio Mar. 23, 2007), citing *Herakovic v. Catholic Diocese of Cleveland*, No. 85467, 2005-Ohio-5985 (Ohio Ct. App. Nov. 10, 2005) ("the complaint must allege more than just a business relationship in order to constitute an enterprise and trigger RICO liability").

Indeed, it cannot be a RICO conspiracy for a lender to lend money, or for a title company to be the title agent, or for an institutional note purchaser to purchase notes, or for a business consultant to consult, or for the head of a company to manage the company. *Javitch*, 284 F. Supp.2d at 854 (collecting cases) ("merely providing

---

[4] Although Plaintiffs name George Triantafilou personally, all of his alleged conduct admittedly was done through and on behalf of GT Financial. Thus, there is no basis to name him personally. Plaintiffs do not even allege GT Financial is an alter ego of Mr. Triantafilou.

financing to a RICO enterprise does not constitute participation in the affairs of the enterprise"); *Johnson v. United States Bank Natl. Assn.*, No. 1:09-cv-492, 2010 U.S. Dist. LEXIS 153047, \*27-28 (S.D. Ohio May 12, 2010) ("even after *Cedric Kushner*, a RICO enterprise cannot consist of a corporation 'associating' with its own employees or agents, when that enterprise is conducting its own business - in this case, payment processing" and "a RICO conspiracy claim requires more than the Defendants' knowledge of an unlawful RICO enterprise, or some association with persons conducting an enterprise"); *City of Cleveland v. Woodhill Supply, Inc.*, 403 F. Supp. 2d 631, 636-37 (N.D. Ohio 2005) (granting motion for judgment on the pleadings where RICO complaint did not adequately allege an enterprise among entities engaged in the conduct of their own normal business operations); *Hendrix v. Akin*, No. 15-cv-12364, 2015 U.S. Dist. LEXIS 157031, \*12-15 (E.D. Mich. Nov. 20, 2015) (dismissing RICO claim for several reasons, finding, "Plaintiffs have not alleged that Defendant Orkin did anything other than conduct its own business affairs as an outside professional.").

Boiled down, that is all Plaintiffs allege – that because the additional named Defendants entered into a business relationship with Build, thereby offering their normal services to Build, they must be part of some grand scheme to defraud. Foundationally though, the enterprise must be "***separate and apart***" from the alleged predicate acts comprising the wrongdoing. So, a defendant cannot be implicated in a RICO scheme simply by virtue of doing that which it normally does in the ordinary course of business.

Likewise, that Defendants all profit from their business relationship with Build is meaningless. (*See* Doc. 1 at PageID ##76-77, ¶¶ 187-193). That does not make it an

"enterprise." *Flanagan*, 2005-Ohio-3133 at ¶¶ 12-14 (RICO defendants must have been "involved" in the corrupt acts).

Here, there are no plausible allegations of such involvement by anyone else outside of Build. Again, that Defendants entered into routine business transactions with Build does not make them an active part in the underlying wrongs alleged. And the conclusory allegations that Defendants "knowingly conspired" to defraud Plaintiffs is not enough either, especially given the heightened particularity pleading demanded under Fed. R. Civ. P. 9(b). (*See* Doc. 1 at PageID ## 74, 77, ¶¶ 178-179, 195 ("Each Defendant has conducted itself with the purpose of directing . . . corrupt activities with the knowledge of and agreement to further the same")).

Courts routinely dismiss fraud claims under the OCPA and/or RICO with similar conclusory allegations. This Court should also dismiss the claim here. *Cooke*, 2007 U.S. Dist. LEXIS 20936 at *11-12; *Dixon*, 2014-Ohio-4079 at ¶¶ 19-26; *Woodhill Supply, Inc.*, 403 F. Supp. 2d at 636-37; *Hendrix*, 2015 U.S. Dist. LEXIS 157031 at *12-15.

### iii. No RICO injury or proximate causation

#### 1. *No Injury*

Lack of enterprise issues aside, Plaintiffs have not adequately pled the existence of a distinct RICO injury proximately caused by any predicate acts. Both are required to sustain a RICO claim. *ABN AMRO Mortg. Group.*, 2007 U.S. Dist. LEXIS 26585 at *31-32; *Readnour*, 2015 U.S. Dist. LEXIS 25092 at *6-7.

At its core, this case is about three Plaintiffs who lost money on **an investment**. They took out a loan from Build, in exchange for the right to rehab a property and the opportunity to sell it for a gain. Many investors have successfully done that. Unfortunately, Plaintiffs did not because they breached their promissory note

13

obligations and forced Build to assume them. But the loans were non-recourse. So they were permitted to walk away from their outstanding note payments, without any consequences. Like all investments, there is and was risk.

And as Plaintiffs admit – and indeed this is the gist of the entire case – they never owned the properties. Instead, what they admittedly (and knowingly) invested in was the **opportunity** to rehab the properties and the hopeful expectation to sell them for a profit – provided of course that they met their ongoing loan obligations. Plaintiffs here did not do that.

But, for purposes of the RICO claim, the "injury" – not realizing a profit on a commercial property investment, and then walking away from their note obligations – is much too speculative to suffice as a concrete injury. Distilled, it was a mere expectancy interest, not a tangible property right, which they lost out on. That's not nearly enough. *E.g.*, *Lewis v. Drouillard*, 788 F. Supp.2d 567, 571 (E.D. Mich. 2011) (collecting cases) (dismissing case because "At most, Plaintiffs can establish an injury to a mere expectancy interest. Injury to speculative or expectancy interests is not cognizable under RICO."); *Short v. Janssen Pharm., Inc.*, No. 1:14-CV-1025, 2015 U.S. Dist. LEXIS 61123, *7-12 (W.D. Mich. May 11, 2015) (collecting cases) ("a plaintiff must suffer an injury to business or property to file a suit under RICO," a foundational standing requirement which "carries restrictive significance"); *Greer v. Home Realty Co. of Memphis, Inc.*, No. 07-2639, 2010 U.S. Dist. LEXIS 148298, *9-11 (W.D. Tenn. May 18, 2010) (dismissing case where alleged injury – stemming from loan plaintiff obtained from defendant – was too speculative to amount to a cognizable RICO injury).

### 2. *No Causation*

14

Even beyond the injury flaws, Plaintiffs have not adequately pled causation either. RICO law is clear – a plaintiff must prove both actual and proximate causation between the predicate acts and the resulting harm to sustain a claim for relief:

> The United States Supreme Court held that evidence that an injury to plaintiff would not have occurred "but for" the defendant's alleged RICO violation, *i.e.,* that plaintiff suffered a mere injury in fact, is insufficient to establish RICO causation. Instead, the plaintiff must also prove proximate causation, [which] requires some direct relation between the injury asserted and the injurious conduct alleged. Following *Holmes,* the Sixth Circuit held that a RICO plaintiff must prove it realized damages directly caused by the defendant's conduct violative of RICO; mere "but for" injuries consequent to intervening losses directly caused to another party are insufficient.

*Quade v. Rodriguez*, E.D. Tenn. No. 2:07-CV-64, 2009 U.S. Dist. LEXIS 62802, *18-21 (July 21, 2009) (collecting cases, internal citations omitted).

There is no causation here. The cornerstone of Plaintiffs' Complaint involves earnest money checks, bank statements, and proof of funds letters that Build uses to purchase properties. (Doc. 1 at PageID ## 58-65, 71-74). Plaintiffs allege such documents have been forged, falsified, tampered with, and/or "photoshopped." (*Id.*). They use those allegations to shoehorn RICO and common law conspiracy claims not only against Build and its affiliated companies, but all other Defendants as well. Indeed, these "false" checks and bank statements are the threshold evidence for many of the asserted "corrupt activities" – prerequisites to any OCPA claim. (*See id.*).[5] Without these sensationalized forgery allegations, the RICO and conspiracy claims vanish.

There are two sides to most Build transactions: (1) the "buy side"; and (2) the "sell side." The buy side refers to how Build, or one of its affiliates, <u>acquires</u> a property.

---

[5] For instance, Plaintiffs say the transmission of these "fake" checks independently amount to repeated instances of wire fraud, violations of Ohio's Telecommunications Act, records tampering, and forgery. (Doc. 1 at PageID ## 70-73).

The sell side refers to how Build <u>sells</u> a property to an investor through the LLC and trust model. Obviously, before that second step, Build must first obtain the property from a third-party seller. Like most real estate deals, Build makes an offer to that third-party seller. If that offer is accepted, normal due diligence and closing processes ensue. Some third-party sellers require earnest money or a proof of funds letter from Build prior to closing. *<u>Notably, these sellers are not part of this case currently. Nor are they proposed plaintiffs in the expansive class defined by the Complaint</u>*.

Instead, Plaintiffs and the proposed class members here are investors who purchased property on the **sell side** from Build through the LLC and trust model. (*Id.* at PageID # 48, ¶ 138). Dispositively, however, this false check/records tampering/forgery narrative derives solely from allegations that Build falsifies the earnest money checks, proof of funds letters, and bank statements on the ***buy side*** of the transaction – i.e., to the sellers from whom Build buys the properties in the first place. But Plaintiffs have nothing to do with that:



(*Id.* at PageID ## 58-65, 71-74).

Crucially absent from this case are the third-party sellers Plaintiffs claim are being swindled and defrauded.[6]  Plaintiffs are on the opposite side of the transaction and do not see, rely on, or have anything to do with the representations between Build and the original seller.  (For instance, if Build did not provide an earnest money check to acquire a property and the deal fell through, that seller would have a claim.  But that hypothetical is not the reality with the properties Plaintiffs purchased.  In any event, that hypothetical seller is not a party here.)

In short, Plaintiffs' RICO allegations stemming from purportedly false or forged checks and bank statements from Build to its seller are meaningless.  Fraud requires a plaintiff to justifiably rely on the false statement.  *Wiles v. Miller*, 2013-Ohio-3625, 3 N.E.3d 226, ¶ 33 (Ohio Ct. App.), citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998).  Also, an actionable RICO claim requires a distinct RICO injury to be proximately caused by the alleged predicate act.  *Quade*, 2009 U.S. Dist. LEXIS 62802 at *18-19, citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992); *In re Reciprocal of Am. Sales Practices Litig.*, 2006 U.S. Dist. LEXIS 71808 at *41 (dismissing RICO complaint where plaintiffs did not plead how they "were injured as a proximate result of those racketing acts because they d[id] not plead with particularity facts demonstrating reliance" on the purported fraud).

Here though, Plaintiffs cannot dispute – and indeed, they do not plead otherwise – that neither they nor any other putative class member sees, much less relies upon, any "false" checks or bank statements.  Plaintiffs cannot then demonstrate a RICO injury proximately caused via alleged predicate acts that have absolutely nothing to do with

---

[6] That is no surprise – no sellers are complaining about anything because Build pays 100% of the purchase price agreed to between the parties on that buy side of the transaction when it purchases the property.

them.  Instead, they dealt with an entirely separate side of the transaction they never saw or were a part of.  Therefore, the alleged forgery/records tampering is irrelevant here.  And Plaintiffs cannot use an alleged fraud against non-parties, which did not cause these Plaintiffs any injury, to support their claims.

### iv.  No hook for liability against Gary Bailey, George Triantafilou, or Stephen King individual or for G2 Technologies, LLC

Finally, even assuming Plaintiffs had adequately pled a RICO claim against the entity Defendants themselves, there is no basis for liability against Gary Bailey, George Triantafilou, or Stephen King individually.  Instead, Plaintiffs' allegations against them, distilled down, are for acting as part of Build in this alleged conspiracy.  (Doc. 1 at PageID ## 74-77).  Indeed, Plaintiffs claim that Mr. Triantafilou and Mr. King are Build's "*de facto*" CFO and CEO, respectively.  (*Id*.).

But, it is well-established that one cannot conspire with his own company. *Johnson*, 2010 U.S. Dist. LEXIS 153047 at \*27-28.  The premise is that one cannot conspire with itself, such that agents of an entity cannot conspire with the entity on whose behalf they are acting.  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505, 509-10 (6th Cir. 1991) ("A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."); *Abuobeid v. Hargus*, No. 2:08-cv-762, 2010 U.S. Dist. LEXIS 43093, \*19-20 (S.D. Ohio May 3, 2010) ("The intracorporate conspiracy doctrine provides that employees of a corporation or governmental entity cannot conspire among themselves because they are treated as one entity."); *Lincoln Elec. Co. v. Manahan*, No. 1:10 cv 00724, 2011 U.S. Dist. LEXIS 89169, \*18 (N.D. Ohio Aug. 11, 2011) ("a corporation cannot conspire with itself," nor can agents of a corporation conspire with

18

the corporation); *Williamson v. Ocwen Loan Servicing, LLC*, No. 3:09-0514, 2009 U.S. Dist. LEXIS 119509, *13-14 (M.D. Tenn. Dec. 23, 2009).

Moreover, with respect to Mr. Triantafilou specifically, there are no allegations that he was acting outside the scope of his role in his own company, GT Financial, LLC. Instead, the only role that Mr. Triantafilou plays in this fabricated conspiracy is that his company, GT Financial, lends money to Build. (Doc. 1 at PageID # 74, ¶ 182). And to the extent Plaintiffs incorrectly allege he was "*de facto*" CFO of Build, Mr. Triantafilou cannot have conspired with an entity Plaintiffs themselves claim he is part of. *Abuobeid*, 2010 U.S. Dist. LEXIS 43093 at *19-20; *Manahan*, 2011 U.S. Dist. LEXIS 89169 at *18.

Therefore, assuming any viable RICO claims can proceed, the claims against Gary Bailey, George Triantafilou, and Stephen King in their individual capacities must be dismissed. Simply put, either they are part of Build, or they are not.

Likewise as to G2 Technologies, LLC, there is no basis for its involvement in this suit. Plaintiffs named G2 Technologies, LLC as a Defendant solely because it has an option to buy shares in Build. (Doc. 1 at PageID # 75, ¶ 184). Of course, there is zero authority for the proposition that one entity, which has an option to purchase another, suddenly is liable for an alleged conspiracy with that separate entity. Indeed, there are no factual allegations supporting a conspiracy claim against G2 Technologies, LLC. For that reason alone, the claims against G2 Technologies must be dismissed.

### B. Civil Conspiracy – Count Three

Plaintiffs' civil conspiracy claim is mostly a rehash of the baseless RICO count. (*See* Doc. 1 at PageID ## 83-89). A civil conspiracy is "a malicious combination of two or more persons to injure another person or property, in a way not competent for one

19

alone, resulting in actual damages." *Dixon*, 2014-Ohio-4079 at ¶ 23, citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995). A plaintiff must also demonstrate an underlying unlawful act. *Id*. at ¶ 24.

Further, where a civil conspiracy claim follows in the footsteps of an OCPA or RICO claim, not adequately alleging the latter dooms the former:

> [T]he failure to successfully allege an OCPA violation negates a civil conspiracy cause of action . . . Without these parameters, individual plaintiffs could fashion broad conspiracy claims that have the illusion of a pattern and of an enterprise, when, in fact, they have individual defendants acting in their own individual affairs and not that of an enterprise. This would nullify the mandate under OCPA that . . . one must allege with specificity an OCPA violation.

*Id*. at ¶ 25 (collecting cases). Thus, because Plaintiffs cannot state an actionable OCPA or RICO claim, their civil conspiracy claim cannot stand either.

Moreover, Plaintiffs' generic legal conclusion that "Defendants have engaged in a civil conspiracy to unlawfully injure Plaintiffs and the Plaintiff Class" is insufficient. (Doc. 1 at PageID # 83, ¶ 212). *Stainbrook v. Ohio Sec'y of State*, 2017-Ohio-1526, 88 N.E.3d 1257, ¶ 11 (Ohio Ct. App.) ("a court is not bound to accept as true a legal conclusion couched as a factual allegation"); *Mortgage Lenders Network, Inc. v. Adkins Appraisal Servs.*, No. 3:04 cv 7767, 2006 U.S. Dist. LEXIS 11018, *9-10 (N.D. Ohio Mar. 17, 2006) (same).

The same is true for Plaintiffs' broad-brush allegations that each of the additional Defendants (i.e., such as First Title or the incorrectly-named "Smith Graham" and "Five Mile"[7]) "has direct knowledge" of Build's purported fraud and profits from doing business with Build. (*See* Doc. 1 at PageID ## 85-89). That cannot be enough.

---

[7] As already pointed out by those wrongly-named entities, the actual permanent lenders here are SGIA Residential Bridge Loan Venture V LP and Five Mile Capital Residential Bridge Loan Venture IV LP. (*See* Doc. 19).

Otherwise, all a plaintiff has to do is plead that one co-conspirator "had knowledge of the wrongdoing committed by the other" without any factual backup. *E.g.*, *Neterkeht v. Longworth*, No. 1:12-cv-695, 2013 U.S. Dist. LEXIS 99788, \*38-39 (S.D. Ohio July 17, 2013) (dismissing civil conspiracy claims and leave to amend where there were "no factual allegations to support plaintiff's conspiracy"); *Darling v. Lake Cnty. Bd. of Commrs.*, No. 1:12 CV 194, 2012 U.S. Dist. LEXIS 72978, \*56 (N.D. Ohio May 25, 2012) (dismissing conspiracy claim because Plaintiffs did "not allege a single plan, nor d[id] they include facts that demonstrate that each of the named Defendants shared in a single objective"); *Mortgage Lenders Network, Inc.*, 2006 U.S. Dist. LEXIS 11018 at \*8-10.

Again, besides the fact that Defendants have conducted arms-length transactions in the ordinary course, there is nothing establishing an actual agreement (to conspire). That Defendants engaged in their normal business activities – whether loaning money, providing business consulting, or acting as title agent – cannot be a hook for a conspiracy claim without supporting facts, not just unadorned conclusions, evidencing an <u>agreement to injure</u> Plaintiffs. *E.g.*, *In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp.2d 775, 804-06 (N.D. Ohio 2007) (mere business association with a purportedly fraudulent organization is not enough, absent facts showing an "intent to advance the alleged conspiratorial goals"). Absent that fundamental allegation, there can be no conspiracy.

## C. Unjust Enrichment – Count Four

In Count IV, Plaintiffs allege unjust enrichment against Build Realty and its affiliated entities. (Doc. 1 at PageID ## 89-91). Plaintiffs complain that Build unfairly marks up the property to the end investors – i.e., Build flips the property for a greater

price than it originally purchased the property for. (*Id*.). For starters, such property flipping is routine, and no law prohibits it. In fact, the whole point of the underlying investment opportunity is that Plaintiffs themselves receive the opportunity to do the same. Moreover, the price Build pays for a property is a matter of public record, and nothing prevents any investing LLC from identifying that initial purchase price.

More foundationally as a matter of law, there can be no unjust enrichment claim. As Plaintiffs outline in their Complaint, a series of contracts already governs the same subject matter, so Defendants cannot be liable for unjust enrichment as a matter of law. (Doc. 1 at PageID # 31, ¶ 78 ("The Investor . . . signs or accedes to approximately 17 documents.")). *See Great Water Capital Partners, LLC v. Down-Lite Intl., Inc.*, No. C-150015, 2015-Ohio-4877, ¶¶ 15-18 (Ohio Ct. App. Nov. 18, 2015) (affirming dismissal of unjust enrichment claim where the subject matter of the claim was covered under a written agreement); *Bartell v. LTF Club Operations Co.*, No. 2:14-cv-00401, 2015 U.S. Dist. LEXIS 49084, *26 (S.D. Ohio Apr. 14, 2015) (dismissing unjust enrichment claim because "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject"); *DavCo. Acquisition Holding, Inc. v. Wendy's Intl., Inc.*, No. 2:07-cv-1064, 2008 U.S. Dist. LEXIS 27108, *31-35 (S.D. Ohio Mar. 19, 2008).

### D. Declaratory Judgment on Right to Redeem and Excess Proceeds – Count Five

The genesis of this case over two years ago was whether the transaction structure offered by Build Realty violated the rights of redemption and excess proceeds – rights only accompanying a standard personal mortgage and promissory note. These rights

clearly do not apply here, though Plaintiffs continue to complain about them. (Doc. 1 at PageID ## 91-93).

Under Ohio and Kentucky law, the right to redeem a property connotes a homeowner's right in foreclosure to catch up on its outstanding loan payments before the property is sold to someone else. The right to excess proceeds is triggered when a lender who sells the foreclosed property is left with a positive balance – i.e., when the foreclosure sale results in a price that exceeds the remaining loan amount. As Plaintiffs note, both rights are covered by statute. *See* R.C. 2329.33, K.R.S. 426.530 (right to redeem); R.C. 5723.11, K.R.S. 426.500 (right to excess proceeds).

And, as Plaintiffs also note, albeit implicitly, neither right applies here. Indeed, they admit that Build's transaction model "***avoids*** Ohio usury, mortgage, and other statutory protection laws." (Doc. 1 at PageID # 6, ¶ 9 ("the inapplicability of usury laws and foreclosure rights"); *id*. at PageID# 27, ¶ 63 ("this is to avoid usury, mortgage, and other statutory protection laws"); *id*. at PageID # 38, ¶ 108 ("purpose of circumventing consumer protection and usury laws")).

That is correct. The rights of redemption and excess proceeds only apply where the debtor is also the title owner and mortgagor. See R.C. 2329.33 ("in sales of real estate on execution or order of sale . . .") and K.R.S. 426.530 ("if real property sold in pursuance of a judgment or order of a court"); R.C. 5723.11 ("Payment of excess proceeds of sale to owner") and K.R.S. 426.500 ("surplus proceeds" shall be paid "to the defendant, the owner of the property").

Plaintiffs know this too: "Ohio and Kentucky statute and common law require that mortgage loans be accompanied by certain rights in a defaulting ***mortgagor***." (Doc. 1 at PageID# 91, ¶ 227). Here though, the Plaintiff investors are neither the title

23

owners nor the mortgagors. Rather, by the unambiguous terms of the documents Plaintiffs sign, Build or Edgar is the title owner and the mortgagor too. (*Id.* at PageID #5, ¶ 6 ("ownership remains with Build through one of Build's alter egos acting as trustee"); *id.* at PageID # 92, ¶ 232 ("Edgar Construction is named as Mortgagor in the Mortgage executed as part of the Trust Transaction")).

Thus, the cases Plaintiffs rely on about "clogging" the right of redemption do not apply. The debtors in those cases held direct title to the property and thus were the mortgagors on the property. *See Shaw v. Walbridge*, 33 Ohio St. 1, 5-6 (1877) (discussing the right to redeem by the "mortgagor"); *Panagouleas Interiors v. Silent Ptnr. Group, Inc.*, No. 18864, 2002 Ohio App. LEXIS 1305, *23, 35 (Ohio Ct. App. Mar. 22, 2002) (same); *Sebastian v. Floyd*, 585 S.W.2d 381, 383 (Ky. 1979) ("Where the purchaser of property has given a mortgage . . . the mortgagor has the right to redeem the property . . . .").

That is not the case here. Plaintiffs are neither the title owners nor mortgagors. The rights of redemption and excess proceeds do not apply then. Notably, even though this case has been pending for over two years, Plaintiffs have yet to cite a single authority holding this business model – investing in rehab properties through an LLC and having another entity serve as title-owner and mortgagor – violates any law.

What's more, even setting aside that these rights are not even triggered in the first place, Plaintiffs' claims fall short in another way. They have not pled that they could redeem the property if they wanted to.

Even where there is a recognizable right of redemption in a bona fide mortgagor (which Plaintiffs are not), a plaintiff must establish that it could have, or wanted to, redeem to begin with. *See Whipps v. Ryan*, No. 14AP-67, 2014-Ohio-5302, ¶¶ 45-46

24

(Ohio Ct. App. Nov. 28, 2014) ("However, there is no evidence in the record that appellant attempted to exercise his right to redemption" and "because the record does not reflect that appellant ever attempted to exercise his right at redemption or make payment on the judgment," R.C. 2329.33 was not violated); *JDI Murray Hill, LLC v. Flynn Props., LLC*, No. 94259, 2011-Ohio-301, ¶ 40 (Ohio Ct. App. Jan. 27, 2011) (the right of redemption expired after appellants did not exercise or try to exercise that right); *Jarvis v. Whitman*, 51 Ky. 92 (Ky. Ct. App. 1851) (same); K.R.S. 426.530 (right to redeem expires if debtor does not try to redeem within six months of sale).

Like all redemption cases, those arose in the context of a foreclosure against a property in which title was held, and a mortgage given, directly by the plaintiff. Neither of which is the case here. In any event, Plaintiffs likewise have not pled that they could or would have redeemed the properties. In fact, in virtually all default situations, including the three named Plaintiffs here, the investors have voluntarily walked away – expressly choosing not to continue with any payments and not to redeem. This of course inured to Plaintiffs' benefit, and Build's detriment. Either way, Count V does not state a claim on which relief can be granted. It must be dismissed.

### E. Declaratory Judgment that Trusts are Void – Counts Six and Seven

Finally, Plaintiffs claim the entirety of the trust transactions at issue – not only for them but also the hundreds of other putative class members who have profited from their investments – are void or voidable because of either fraud or public policy. (Doc. 1 at PageID ## 93-95). As a result, they demand a "return of all money" that the class members paid out. (*Id.* at PageID ## 93, 95, ¶¶ 239, 249). At the same time though,

25

they also want to keep their respective properties and force Defendants to help them finalize their property rehab and subsequent sale. (*Id*.).

These are curious allegations. Admittedly, Plaintiffs defaulted on their loan obligations, voluntarily walked away, and refused to make any further payments on the notes. No authority allows Plaintiffs to get the properties back, recoup all their investment, and subsequently enjoy the gains on the transaction without paying their loans at the same time.

The rescission or voiding of any agreement requires not only the return of all payments made by the party seeking to rescind or void it, but also all monies and consideration paid to that party. *Barnes v. Reserve Energy Exploration*, No. 14 BE 0013, 2016-Ohio-4805, ¶¶ 16-18 (Ohio Ct. App. June 28, 2016) (collecting cases) (a party seeking rescission "must prove that they tendered back all consideration received under the agreement"); *Gleich v. St. Andrew Sch.*, No. 2:10-cv-894, 2011 U.S. Dist. LEXIS 113176, *7-10 (S.D. Ohio Sept. 30, 2011) (collecting cases).

In other words, a party cannot keep both the benefits of the agreement and get back the money it paid to enter that agreement at the same time:

> It would be inequitable to grant to plaintiff that which she now claims and at the same time leave her in possession of that which she received. She has not offered to do equity.

*Barnes*, 2016-Ohio-4805 at ¶ 17, citing *Miller v. Bieghler*, 123 Ohio St. 227, 174 N.E. 774 (1931). Indeed, restoring the parties' to their original positions goes both ways. *Id.*; *Fenix Ents. v. M&M Mtge. Corp.*, 624 F.Supp.2d 834, 842 (S.D. Ohio 2009) ("When a contract is rescinded, it must be rescinded in total"); *First Natl. Bank v. Gardner*, 348 S.W.2d 839, 840-42 (Ky. Ct. App. 1961).

Thus, to the extent Plaintiffs want to void everything on behalf of the entire class, they will have to return all consideration and money paid to them as a result of the deal. That restores the parties to their original positions – meaning the hundreds of class investors who profited will have to give all of that back to Build in exchange for the money those investors paid out to Build. Of course, neither the named Plaintiffs nor the rest of the putative class have offered to tender anything back to Defendants. That dooms their claims.

Moreover, for the properties that have subsequently resold following Plaintiffs' breach of their promissory note obligations, there is no mechanism by which to "undo" the transactions. Plaintiffs plead as if it is as simple as returning the consideration paid by each side. But in several cases, including the three named Plaintiffs, Build no longer possesses the properties invested in, but rather resold them. Therefore, there is no way to restore the parties to the status quo. *Cross*, 161 Ohio St. 469; *Fenix Ents.*, 624 F.Supp.2d at 842; *Gardner*, 348 S.W.2d at 840-42.

Indeed, the Court cannot order the party who currently owns the property to give it back. The law does not permit such judicial re-conveyance. *Yanik v. City of Silverton*, No. C 090707 (Ohio Ct. App. June 16, 2010) (holding that case was moot because the court had no authority "to retrospectively order judicial reversal of the conveyance" once title was conveyed to Silverton); *Painesville Twp. Bd. of Trustees v. City of Painesville*, No. 97-L-090, 1998 Ohio App. LEXIS 2942, *12-15 (Ohio Ct. App. June 26, 1998), citing *Garverick v. Hoffman*, 23 Ohio St.2d 74, 262 N.E.2d 695 (1970).

For any of these reasons, Counts VI and VII must be dismissed.

### F. The Court should strike Plaintiffs' jury demand.

27

Finally, regardless of what claims remain, the Court should strike Plaintiffs' jury demand. Plaintiffs expressly and unambiguously waived the right to a jury trial across multiple documents they signed:

> 10. WAIVER OF TRIAL BY JURY
>
> (a) BENEFICIARY AND LENDER EACH COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY.
>
> (b) BENEFICIARY AND LENDER EACH WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

(*See* Exhibit 1, "Beneficiary's Undertaking").[8]

And again:

> 17. WAIVER OF TRIAL BY JURY
>
> (a) BENEFICIARY AND LENDER EACH COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY.
>
> (b) BENEFICIARY AND LENDER EACH WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND

---

[8] Although these exhibits just relate to Compound Property Management LLC, each Plaintiff signed the same document. Defendants do not attach them all here merely for simplicity sake. To be sure though, they can be considered on the pleadings, since all of the trust documents are referenced and incorporated in the pleadings. *See* Fed. R. Civ. P. 10(c); *MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp.2d 944, 963 n.4 (N.D. Ohio 2008) (written instruments or documents referenced in the pleadings may be considered in a motion to dismiss); *Superior Care Pharm., Inc. v. Med. Shoppe Intl., Inc.*, No. 2:10-cv-207, 2011 U.S. Dist. LEXIS 13013, *35-37 (S.D. Ohio Feb. 10, 2011) (same).

> VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

(*See* Exhibit 2, "Combined Security Agreement and Assignment of Rents and Leases").

> And still again:

> 14.  WAIVER OF TRIAL BY JURY

> (a) ASSIGNOR AND LENDER EACH COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS ASSIGNOR/BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY.

> (b) ASSIGNOR AND LENDER EACH WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

(*See* Exhibit 3, "Collateral Assignment of Beneficial Interest").

Thus, as if once was not enough, Plaintiffs clearly and knowingly waived their jury trial rights – three separate times.  Courts routinely enforce such jury trial waivers, and there is no reason for Plaintiffs to avoid their repeated contractual promise in this case.  *E.g.*, *Jones v. U-Haul of Mass. & Ohio*, 16 F. Supp. 3d 922, 940-41 (S.D. Ohio 2014); *Aracri v. Dillard's, Inc.*, No. 1:10-cv-253-MRB, 2011 U.S. Dist. LEXIS 41596, *5-9 (S.D. Ohio Mar. 29, 2011); *Blurton v. Fesmire*, 266 B.R. 827, 832-33 (W.D. Tenn. 2001); *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc.*, 528 F. Supp.2d 710, 712-15 (E.D. Mich. 2007); *Martorella v. Deutsche Bank Natl. Trust Co.*, No. 12-80372-CIV, 2013 U.S. Dist. LEXIS 36886, *7-10 (S.D. Fla. Mar. 18, 2013); *PNC Equip. Fin., LLC v. Aero Toy Store, LLC*, No. 1:12-cv-236, 2012 U.S. Dist. LEXIS 115532, *10-14 (S.D. Ohio Aug. 16, 2012).

In line with this precedent and Plaintiffs' repeated agreement to waive any future jury trial rights, the Court should strike their jury demand.

### III.   CONCLUSION

For the foregoing reasons, the Court should: (1) abstain from hearing this case; or, alternatively, (2)(a) dismiss the RICO (Count I), civil conspiracy (Count III), unjust enrichment (Count IV), and declaratory judgment claims (Counts V-VII) against these moving Defendants, and at minimum all claims against G2 Technologies, LLC as well as Gary Bailey, George Triantafilou, and Stephen King individually; and (2)(b) strike Plaintiffs' demand for a jury trial under the unambiguous contractual waivers.

Respectfully submitted,

**/s/ Alex M. Triantafilou**
Alex M. Triantafilou, Esq. (0066311)
Richard D. Porotsky, Jr., Esq. (0067234)
Bryan E. Pacheco, Esq. (0068189)
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio  45202
Phone:  (513) 977-8200
Fax:  (513) 977-8141
alex.triantafilou@dinsmore.com
richard.porotsky@dinsmore.com
bryan.pacheco@dinsmore.com

*Attorneys for Defendants Build Realty, Inc., Edgar Construction, LLC, Cincy Construction, LLC, McGregor Holdings, LLC, Cowtown Holdings, LLC, Build NKY, LLC, Greenleaf Support Services, LLC, Build SWO, LLC, Gary Bailey individually and as Trustee, George Triantafilou individually and as Trustee, G2 Technologies, LLC, GT Financial, LLC, and Stephen D. King*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of April, 2019, the foregoing document was electronically filed with the Clerk of Courts for the U.S.D.C. for the Southern District of Ohio via the Court's CM/ECF system, which system will notify all parties of the filing of same. The parties may access this filing through the Court's system.

*/s/ Alex M. Triantafilou*
Alex M. Triantafilou, Esq. (0066311)