## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **Compound Property Management, LLC, et al.** | Case No. 1:19-cv-00133-MRB |
| Plaintiffs, | JUDGE MICHAEL R. BARRETT |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| **Build Realty, Inc., et al.** | |
| Defendants. | |

### I. Introduction

Defendants the "Build Companies,"[1] Gary Bailey, George Triantafilou, G2 Technologies, LLC, GT Financial, LLC, and Stephen D. King hereby submit the following Reply in Support of their Partial Motion to Dismiss (Doc. 31):

Courts throughout the country, including in the Sixth Circuit, have repeatedly rebuked RICO abuse. Congress never intended "garden-variety" business disputes, like here, to be contorted into federal criminal conspiracy cases:

> Congress passed RICO . . . to combat organized, long-term criminal activity. Even though Congress never intended that the statute be employed to allow plaintiffs to turn garden-variety state law fraud and breach of fiduciary duty cases into RICO claims, from the beginning, the breadth of RICO's text and the lure of treble damages and attorneys' fees proved irresistible to those bent on federalizing such claims. Thus, plaintiffs have tried -- unsuccessfully -- to wedge every manner of ordinary dispute into a RICO case . . . To prevent RICO from being misused as a vehicle for federalizing state court fraud claims, courts sought to limit RICO's seemingly limitless reach.

*Meier v. Musberger*, 588 F. Supp. 2d 883, 899-900 (N.D. Ill. 2008) (collecting cases); *accord In re Reciprocal of Am. Sales Practices Litig.*, No. MDL 1551, 2006 U.S. Dist.

---

[1] As defined by Paragraph 30 of Plaintiffs' Complaint.

LEXIS 71808, *38-39 (W.D. Tenn. Sept. 29, 2006); *Ponte v. Chase Bank*, No. 12-cv-13901, 2013 U.S. Dist. LEXIS 155044, *27-28 (E.D. Mich. Oct. 8, 2013).

This case exemplifies such RICO overreaching. Plaintiffs, three limited liability companies, (1) participated in a rehab investment opportunity, (2) were loaned hundreds of thousands of dollars' worth of non-recourse funds, (3) subsequently breached their promises to pay back that money, and then (4) voluntarily walked away from their rehab projects – without paying back their notes – saddling Defendants with the resulting property maintenance and attendant loan obligations.

Despite walking away from their non-recourse loans, Plaintiffs accuse Build and the other Defendants of repeated criminal acts, "indictable" even. Plaintiffs claim to be the victims of an expansive racketeering scheme. Of course, there has been no criminal action against Defendants. Nor have any "indictments" been sought, let alone handed down. Instead, there are just these three named Plaintiffs – alleging crime and fraud of all sorts on behalf of who many that were neither victimized nor defrauded, including their own putative classmates. Indeed, many of them have profited on their investment and continue to deal with Build.

There is much to address in Plaintiffs' opposition. (Doc. 48). Constrained by page limits agreed to by the parties and the Court, Defendants will focus on the most foundational issues posed by Plaintiffs. This is not a federal conspiracy case. At most, it's a run-of-the-mill business dispute, and a baseless one at that. Just because the remaining Defendants offered title, or permanent financing, or consulting services in the normal course for these rehab projects does not implicate RICO.

The Court should follow others around the country in limiting RICO to genuinely criminal activity.[2] The Court should also reject Plaintiffs' wrong reading of Ohio and Kentucky law, which would confer the rights of redemption and excess proceeds to debtors who are not also mortgagors – a result never intended by either legislature.

## II. Count V – There is no right to redemption, no right to excess proceeds, and no authority holding otherwise.

This case started in February 2017 with the central allegation that the underlying business model – selling properties in trust for the benefit of LLC investors and then accepting properties voluntarily given back on default – violates the rights of redemption and excess proceeds. But in the past 28 months, Plaintiffs have not cited a single authority holding this transaction structure is unlawful.

In fact, Plaintiffs repeatedly concede that the model does not violate the statutory or common law rights to redeem and to excess proceeds. (Doc. 1 at PageID # 6 ("the inapplicability of . . . foreclosure rights"); *id.* at PageID # 27 ("this is to avoid . . . mortgage, and other statutory protection laws")). Even now, they call the model a "creative evasion" or "attempted end-run around" of these laws. (Doc. 48 at PageID ## 353-54). Plaintiffs invite this Court to be the first, anywhere, to hold that the rights of redemption and excess proceeds apply even where the debtor is not the mortgagor.

But, as set forth in Defendants' Motion (Doc. 31 at PageID ## 238-240), the rights of redemption and to excess proceeds only apply where the debtor is also the title owner and mortgagor of the property. Plaintiffs' cited authorities agree. (Doc. 48 at PageID ## 353-54). Indeed, the issue in *Panagouleas Interiors v. Silent Ptnr. Group, Inc.*, No. 18864, 2002 Ohio App. LEXIS 1305, *23, 35 (Ohio Ct. App. Mar. 22, 2002)

---

[2] Plaintiffs claim that Defendants have conceded their conduct was criminal because they do not address every predicate act alleged. (Doc. 48 at PageID ## 333-34, 344). Not so. Defendants have repeatedly denied any wrongdoing, criminal or civil.

3

was whether the mortgagor and title holder could waive its right to redemption at the time the mortgage was executed. *Id*. ("a **mortgagor's** equity of redemption . . .").

Here though, Plaintiffs are neither the title owners nor mortgagors. Rather, Edgar Construction is the title owner, and the mortgagor. (Doc. 1 at PageID # 92, ¶ 232). Therefore, Plaintiffs have no right of redemption and to excess proceeds.

The parties agree that: (1) the Court can decide this issue now; and (2) "The Ohio legislature has carefully considered the proper balancing of rights between lenders and borrowers in the event of default in transactions secured by real estate." (*Id*. at PageID ## 352-53). Exactly – as a matter of law, that balance was carefully codified by the General Assembly. There is no right to redemption and no right to excess proceeds unless the debtor is also the mortgagor as a matter of law.

Count V must also be dismissed because Plaintiffs never pleaded that they could have redeemed their properties, even if they wanted to. (Doc. 31 at PageID ## 239-40). Where a right to redeem exists in the first place, plaintiff must also establish it could or would have redeemed the property if given the chance. (*Id*.). Not only did Plaintiffs not plead that, but they did not even respond to that dispositive argument.

On the facts as pled, their right to redeem theme is not plausible. Each Plaintiff voluntarily walked away from its properties and its respective loan obligations. Plaintiffs had the opportunity to "redeem." Instead, they informed Build that they wanted out. And they did get out – voluntarily. Count V must be dismissed.[3]

### III. Count I – The RICO claims also must be dismissed.

#### A. No enterprise.

---

[3] Supporting their right to redeem arguments, Plaintiffs argue the trust structure is unlawful, and thus voidable. (Doc. 48 at PageID ## 354-55). But those allegations are the subject of Counts VI and VII. They have nothing to do with, much less save, Count V - the right to redeem or to collect excess proceeds. (See Doc. 1 at PageID ## 91-93, ¶¶ 226-235).

4

Plaintiffs try to allege two, alternative enterprises: Build Realty, Inc. itself, and an "association-in-fact enterprise" comprised of all the Defendants together. (Doc. 1 at PageID # 52, ¶¶ 155-56). Neither works.

First, Build cannot be an enterprise by itself. *Flanagan v. Eden*, No. 85252, 2005-Ohio-3133, ¶ 14 (Ohio Ct. App. June 23, 2005). Plaintiffs counter, oddly, by resting on their "association-in-fact" allegations. (Doc. 48 at PageID ##338-39). But that's a separate alleged enterprise, and a separate issue at that. This argument focuses solely on the "Build as an enterprise by itself" theory. That theory has been squarely rejected by state and federal courts interpreting RICO, including Ohio's Southern District. *Flanagan*, 2005-Ohio-3133 at ¶ 14; *see also Johnson v. United States Bank*, No. 1:09-cv-492, 2010 U.S. Dist. LEXIS 153047, *27-28 (S.D. Ohio May 12, 2010) ("even after *Cedric Kushner*, a RICO enterprise cannot consist of a corporation 'associating' with its own employees or agents").

The "association-in-fact" enterprise is insufficient too. Plaintiffs cite *Boyle v. United States*, 556 U.S. 938 (2009). (Doc. 48 at PageID ## 326-29, 339). For starters, *Boyle* did not change the requirement that fraudulent RICO claims be pled with particularity, nor that unsupported allegations about a defendant's participation in an enterprise are not enough. *Kattula v. Jade*, No. 07-12569, 2008 U.S. Dist. LEXIS 12320, *12-16 (E.D. Mich. Feb. 20, 2008); *Cooke v. AT&T Corp.*, No. 05-cv-374, 2007 U.S. Dist. LEXIS 20936, *11-12 (S.D. Ohio Mar. 23, 2007).

Also, *Boyle* was a criminal jury instruction case, addressing whether there was a sufficiently "ascertainable structure" to the enterprise. 556 U.S. at 945-48. But this is not a jury instruction case. And here, there is no enterprise to begin with. If a RICO

5

defendant is not performing activities separate and apart from its normal business, there can be no enterprise. That's precisely the case here: First Title insures title, the incorrectly named "Smith Graham" and "Five Mile" are institutional financiers, and GT Financial is a short term lender. (Doc. 31 at PageID ## 224-25).

Defendants cited numerous cases holding that there is no RICO liability for a defendant to participate in its own business in the ordinary course. The underlying purpose for that notion is, as set forth above, to prevent every business dispute from being aggrandized into a federal RICO case. (*Id*.). Those decisions all establish that where a party is engaged in its normal functions (e.g., a title company insuring title), then the racketeering acts are not separate and apart from the enterprise, and the entire enterprise consequently crumbles. (*Id*.). Plaintiffs only address one of the cases – *Johnson*. (Doc. 48 at PageID # 340). They do not attempt to refute *Flanagan*, *Morrow*, *Dixon*, *Cooke*, *Javitch*, *Woodhill Supply*, or *Hendrix*. (Doc. 31 at PageID ## 225-27).

Moreover, Plaintiffs gloss over this Court's thesis in *Johnson*: "a RICO enterprise cannot consist of a corporation 'associating' with its own employees or agents, when that enterprise is conducting its **own** business - in this case, payment processing." 2010 U.S. Dist. LEXIS 153047 at *28. *The emphasis was in the original*, buttressing that RICO is not for companies that engage in arms-length business transactions with others in their own normal course. The racketeering acts must be separate and apart from the enterprise itself. (*See* Doc. 31 at PageID ## 225-27). *E.g.*, *Smith v. Nationstar Mortg.*, No. 1:17 CV 1483, 2017 U.S. Dist. LEXIS 210536, *11 (S.D. Ohio Dec. 21, 2017) ("absent evidence that the members are associated in any manner separate and apart from their corporate activities, there can be no RICO enterprise").

6

Three LLCs want to make a federal RICO case because they defaulted on their loan payments and voluntarily turned their rehab investment projects over to Build. But there is no RICO enterprise here, either among Build itself, or the other Defendants who have simply carried on their **own** business in the normal course.

B. No causation.

Plaintiffs' RICO claims must be dismissed for another reason. Under RICO, a plaintiff must prove both actual and proximate causation between the predicate act and the resulting harm. *Quade v. Rodriguez*, E.D. Tenn. No. 2:07-CV-64, 2009 U.S. Dist. LEXIS 62802, *18-21 (July 21, 2009) ("a RICO plaintiff must prove it realized damages directly caused by the defendant's conduct violative of RICO; mere 'but for' injuries consequent to intervening losses directly caused to another party are insufficient").

A central part of Plaintiffs' case involves allegations that Build falsifies ("photo-shops") checks and bank statements when purchasing properties. (Doc. 1 at PageID ## 58-65, 71-74). Plaintiffs believe Build lied to those unrelated third-party sellers – none of whom are part of this case, current or putative – by claiming to have enough money to purchase without actually having adequate funds. (*Id.*). First, there is no material falsity; there are enough funds, always. No third-party seller who has ever sold a property to Build has complained, or has ever received less than the full agreed-upon purchase price, much less alleged any other wrongdoing.

Second, there is no actual or proximate causation between those alleged predicate acts and any harm suffered by Plaintiffs. Indeed, Plaintiffs did not sell any properties to Build. These "forgeries" were never made to Plaintiffs, nor presented to them in any fashion. Build's investors, including Plaintiffs, have nothing to do with how Build acquires a property. Crucially, there is no link between some supposed harm levied by

7

Build on a third-party seller, and any injuries suffered by Plaintiffs – the buyers purchasing properties from Build later on in the chain.

Plaintiffs rely on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). (Doc. 48 at PageID # 344-45). *Bridge* held that first-party reliance is not an element of a RICO claim premised on fraud. But in *Bridge*, a case about false attestations regarding tax liens, plaintiffs lost out on the ability to acquire those liens for a low price as a direct result of the fraud. 553 U.S. at 643-44. So although plaintiffs did not "rely" firsthand on the misrepresentations giving rise to the mail fraud, the mail fraud still directly impacted and caused harmed to plaintiffs. *Id*. at 647-48.

That is not the case here. The alleged photo-shopping and check forgery did not cause any injury to Plaintiffs. Not only were the checks not relied upon by Plaintiffs, but they had nothing to do with Plaintiffs' claimed harm. Simply put, neither actual nor proximate causation is pled relating to representations made (1) to non-parties, (2) on a separate side of the transaction, (3) which Plaintiffs never see nor rely upon, and (4) which do not directly or indirectly impact, let alone harm, Plaintiffs who eventually purchase the properties via the trust model. *E.g.*, *Schlenker Ents., L.P. v. Reese*, No. 2-10-16, 2010-Ohio-5308, ¶ 38 (Ohio Ct. App. 2010) (OCPA claims "only can be brought by persons who are injured or threatened with injury from an OCPA violation . . . Stubbs only alleged that IDC and the Slacks had defrauded 'unsuspecting investors' into buying Dairy Queen properties . . . Because he failed to show how he had been injured from the OCPA violations, the trial court was correct in dismissing his claims.").

Plaintiffs claim these forgery allegations are only a small part of their RICO claim (Doc. 48 at PageID # 344). Not so; they really are the cornerstone. Plaintiffs hope that by alleging such sensationalized themes, they will overcome the presumption advanced

8

by courts around the country that garden variety business disputes should not molt into federal criminal conspiracy cases. The RICO claims should be dismissed accordingly.

## IV. The jury trial waivers are enforceable now.

Finally, Plaintiffs demand discovery to avoid their repeated jury waivers. (*Id.* at PageID ## 358-60). Plaintiffs – each a separately organized and registered limited liability company – say there are "questions" about whether their agreement to waive a jury trial, in three independent documents, was knowing and voluntary.

Plaintiffs highlight the documents themselves as necessitating discovery on the issue – "One factor, for example, is that the documents submitted by Defendants appear to have been marked upon." (*Id.* at PageID # 359). *But those "marked upon" documents came straight from Plaintiffs. They were attached to the first pleading Plaintiffs filed in state court over two years ago.* (*See* 2/1/17 Complaint, Hamilton County Common Pleas No. A 1700624).[4]

In any event, Plaintiffs argue that a jury waiver issue is not ripe yet. But that ignores the numerous decisions routinely striking jury demands at the motion to dismiss stage where, like here, the waivers are unambiguous. *E.g.*, *Integra Bank Natl. Assn. v. Rice*, No. 3:11-cv-49, 2011 U.S. Dist. LEXIS 63374, *11-15 (W.D. Ky. June 14, 2011); *Starnes Family Office, LLC v. McCullar*, 765 F. Supp.2d 1036, 1055-56 (W.D. Tenn. 2011); *Poynter v. Ocwen Loan Serv., LLC*, No. 3:13-cv-773, 2017 U.S. Dist. LEXIS 99100, *9-17 (W.D. Ky. June 27, 2017); *Franklin Bank v. Tindall*, No. 07-13748, 2008 U.S. Dist. LEXIS 27765, *22-24 (E.D. Mich. Apr. 7, 2008); *Aracri v. Dillard's, Inc.*, No. 1:10-cv-253-MRB, 2011 U.S. Dist. LEXIS 41596, *5-9 (S.D. Ohio Mar. 29, 2011).

---

[4] A party's "attention" does not need to be "drawn" to any particular provision anyway. The law presumes that a party who reads a document before signing has understood and agreed to all its terms. *Zilbert v. Proficio Mortg. Ventures, LLC*, No. 100299, 2014-Ohio-1838, ¶ 17 (Ohio Ct. App. 2014) (collecting cases).

Here, the jury waivers Plaintiffs signed were clear, unambiguous, and numerous. Plaintiffs do not argue otherwise. They waived any jury trial right in three separate documents, each in all capital letters to boot. (Doc. 31-2 at PageID ## 251, 259, 267). The Court should enforce those agreements. Without these documents, Plaintiffs would have no right nor interest in the properties to begin with. They cannot claim rights under certain parts of those agreements and simultaneously disavow others. *JPMorgan Chase Bank v. Winget*, No. 08-13845, 2017 U.S. Dist. LEXIS 201479, *9-10 (E.D. Mich. Dec. 7, 2017) ("jury trial waivers in a contract are to be construed broadly . . . where the cause of action would not exist were it not for the relationship between the parties").

V.  **Conclusion**

For the foregoing reasons, and those more fully set forth in Defendants' principal Motion (Doc. 31), the Court should dismiss Counts I, III, IV, V, VI, and VII of Plaintiffs' Complaint. Alternatively, the Court should dismiss all claims against G2 Technologies and Gary Bailey, George Triantafilou, and Stephen King individually. As more fully set forth in Defendants' Motion (Doc. 31 at PageID # 233-35), there are no facts pled plausibly rendering any of them liable, particularly when Plaintiffs have alleged they acted on behalf of the named entities. Plaintiffs even acknowledge the Sixth Circuit has not expressly permitted a civil conspiracy plaintiff to avoid the intra-corporate conspiracy doctrine merely by invoking RICO.[5] (Doc. 48 at PageID # 347). This Court should not be the first. There is no RICO claim at all here. Certainly, there is no basis for holding Bailey, King, or Triantafilou personally liable.

Finally, at minimum, the Court should strike Plaintiffs' jury demand.

---

[5] In fact, the Sixth Circuit has recently expanded the intra-corporate conspiracy doctrine for § 1983 actions. *See Jackson v. City of Cleveland*, No. 17-3840, 2019 U.S. App. LEXIS 14809, *39-45 (6th Cir. May 20, 2019).

Respectfully submitted,

***/s/ Alex M. Triantafilou***
Alex M. Triantafilou, Esq. (0066311)
Richard D. Porotsky, Jr., Esq. (0067234)
Bryan E. Pacheco, Esq. (0068189)
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax: (513) 977-8141
alex.triantafilou@dinsmore.com
richard.porotsky@dinsmore.com
bryan.pacheco@dinsmore.com

*Attorneys for Defendants Build Realty, Inc., Edgar Construction, LLC, Cincy Construction, LLC, McGregor Holdings, LLC, Cowtown Holdings, LLC, Build NKY, LLC, Greenleaf Support Services, LLC, Build SWO, LLC, Gary Bailey, George Triantafilou, G2 Technologies, LLC, GT Financial, LLC, and Stephen D. King*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of May, 2019, the foregoing document was electronically filed with the Clerk of Courts for the U.S.D.C. for the Southern District of Ohio via the Court's CM/ECF system, which system will notify all parties of the filing of same. The parties may access this filing through the Court's system.

***/s/ Alex M. Triantafilou***
Alex M. Triantafilou, Esq. (0066311)