UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

------------------------------------------------------------X
COMPOUND PROPERTY MANAGEMENT
LLC, et al.

                Plaintiffs,

               - against -

BUILD REALTY, INC. d/b/a GREENLEAF

FUNDING, et al.,

               Defendants.
------------------------------------------------------------X

Index No.: 1:19-CV-00133-MRB

Judge Michael R. Barrett

**Defendants Five Mile and Smith, Graham's Reply in Support of Their Motion to Dismiss**

**Oral Argument Requested.**

## PRELIMINARY STATEMENT

Defendants Five Mile and Smith, Graham (referred to collectively as "Defendants") moved to dismiss Plaintiffs' claims for the simple reason that none of the allegations in the Complaint pertain to them. In opposition, Plaintiffs offer neither an explanation for having named Defendants in the Complaint nor justification for keeping them in this case. Instead, Plaintiffs ask the Court to ignore the distinction between Defendants and the Funds that actually purchase mortgage loans from Defendant Build. But, as a matter of law, the Court may not do so. The Funds are legal entities separate and distinct from Defendants, which did not undertake any of the actions described in the Complaint. Insofar as there are no allegations that Defendants and the Funds are alter egos, or that otherwise warrant disregarding their respective corporate forms, the Court should dismiss the Complaint as against Defendants.

Plaintiffs' related effort to offer additional evidence to support their claims fares no better. As a threshold matter, Plaintiffs' maneuver is improper in the context of a Rule 12(b)(2)

motion to dismiss. And, Defendants' reference to the loan purchase agreements, pursuant to which the Funds bought loans from Build, does not convert their motion to one for summary judgment. It is black letter law that on a motion to dismiss, the Court need not accept as true allegations plainly contradicted by agreements repeatedly referenced in a complaint.

Plaintiffs' suggestion that their "evidence" should nevertheless be considered in the jurisdictional context again misses the point. There are no allegations in the Complaint—jurisdictional or otherwise—regarding Defendants. Plaintiffs' submission of emails between Smith, Graham employees who acted as managers and investment advisors to the Funds does not create a basis for jurisdiction where none exists. By undertaking ordinary course business activities associated with the purchase of mortgage loans secured by Ohio real property, the Funds may have subjected themselves to the jurisdiction of Ohio courts, but the activities of the Funds cannot be imputed to Defendants for jurisdictional purposes. Neither the Complaint, nor Plaintiffs' counsel's self-serving declaration, describes any acts undertaken by Defendants that would be sufficient to subject them to the jurisdiction of this Court.

      I.      <u>Plaintiffs' RICO Claims do not Implicate Five Mile or Smith, Graham</u>.

Plaintiffs assert they have alleged that Five Mile and Smith, Graham "engaged in both predicate and overt acts" in violation of the federal RICO statue. (Doc 49 at PageID 371.) But the paragraphs referenced in support of this contention solely describe activity by the Funds, not Smith, Graham or Five Mile. (Doc. 1 ¶114 ("The lender for this Property was Five Mile."); ¶165(g)(i) ("payment for the loans Smith Graham held on several properties"); ¶166(e)-(f) ("the loan was placed in a pool with other loans and sold to Smith Graham."); ¶168(c) ("Discovery to date has shown that Build has sold approximately 260 properties to Smith Graham."); ¶185 ("The Permanent Lenders purchase notes to free up Build's case availability").) As reflected in

the Loan Purchase Agreement, all of these purported RICO allegations refer to actions of the Funds, not Defendants.[1]

Plaintiffs' assertion that they need only plead facts demonstrating that Five Mile and Smith, Graham "agreed to facilitate the enterprise's actions" (Doc. 49 at PageID 372), similarly fails to identify any acts undertaken by Defendants. (Doc. 1 ¶¶185-7 ("The Permanent Lenders *purchase notes* to free up Build's cash availability . . . so that the Permanent Lenders can receive even greater profits.") (emphasis supplied).)

Plaintiffs' reliance on *Lester v. Percudani*, 556 F. Supp. 2d 473 (M.D. Pa. 2008), a summary judgment case, and *Meeks-Owens v. Indymac Bank F.S.B.*, 557 F. Supp. 2d 566 (M.D. Pa. 2008) is likewise unavailing,[2] as the lender defendants in those cases were alleged to have participated directly in a RICO conspiracy by (i) knowingly lending money to plaintiff borrowers that ordinarily would not have qualified for mortgage loans; and (ii) knowingly lending money to mortgage borrowers based upon inflated appraisals values. Here—notwithstanding Plaintiffs' intentional misuse of the term "Permanent Lender"—the Funds are not mortgage lenders and did not originate the mortgage loans at issue. Instead, it is indisputable that the Funds purchased loans from Build. (Robson Decl. Exs. B-1 & B-2 (Doc. 19-3 & 19-4).)

Moreover, Plaintiffs' reference to vague allegations purportedly demonstrating Defendants' "agreement to participate in the RICO conspiracy" (Doc. 49 at PageID 373) plainly fails to support their claim against Defendants. (Doc. 1 ¶165(g)(i) (reference to wire transfers

---

[1] It is not clear whether Plaintiffs are asking the Court to simply ignore the legal distinction between the Funds and their Manager and Investment Advisors or are claiming that their allegations actually refer to Five Mile and Smith, Graham. In either case, Plaintiffs' position is contrary to the facts and the law. *See* Robson Decl. Exs. B-1 & B-2 (Doc. 19-3 & 19-4); *see also Stenger v. Marriot Int'l Corp. Headquarters*, 2016 WL 223681, at *4-5 (S.D. Ohio Jan. 19, 2016) (Barrett, J.) (dismissing action against improperly named corporate entity and denying leave to amend).

[2] *OSRecovery, Inc. v. One Group Int'l, Inc.*, 354 F. Supp. 2d 357 (S.D.N.Y. 2005) is also inapposite, as the bank involved in that case issued debit cards with knowledge of, and in furtherance of, a Ponzi scheme.

made in connection with the Funds' purchase of loans from Build); ¶166(e)-(f) (reference to loans sold to and purported profit made by the Funds); ¶168(c) ("Discovery to date has shown that Build has sold approximately 260 properties to [SGIA Residential Bridge Loan Venture V LP]."); ¶185, ¶¶ 191-192 (same).)[3]

Insofar as Plaintiffs are implicitly asking the Court to disregard the legal distinctions between Defendants and the Funds, it is worth noting that the Complaint contains not a single allegation which asserts or supports an inference that these distinct corporate entities are alter egos of one another. *Baird Ward Printing Co. v. Great Recipes Publ'g Assocs.*, 811 F.2d 305, 307-08 (6th Cir. 1987) (declining to pierce corporate veil of limited partnership to reach managing corporation where plaintiff failed to provide sufficient evidence of fraud); *Hodak v. Madison Capital Mgmt., LLC*, 348 F. App'x 83, 95 (6th Cir. 2009) (declining to disregard corporate form where claims arose out of contractual relationship with particular entity and was "not shown to be attributable to any use of [that entity's] separate legal identity . . . 'to justify wrong, protect fraud, or defend crime.'") (citation omitted).

It is well established that "the mere ownership by a corporation of all of the stock of a subsidiary amenable to jurisdiction of the courts of a state may not alone be sufficient to justify holding the parent likewise amenable." *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 296 (6th Cir. 1964); *see also MacDonald v. Navistar Int'l Transp. Corp.*, 143 F. Supp. 2d 918, 925-26 (S.D. Ohio 2001) (Rice, C.J.) (same). Similarly here, merely because the Funds

---

[3] As discussed at length in the Build Defendants' motion to dismiss, courts have declined to impose RICO liability where the allegations merely describe activities performed by a defendant in the ordinary course of business. (*See* Doc. 31 at PageID 223-28; Doc. 55 at PageID 5-6.) There are no allegations made as to Smith, Graham or Five Mile, or even as to the Funds, that allege activities outside normal business dealings. *See Flanagan v. Eden*, 2005-Ohio-3133 at ¶14 ("There is no indication that any of the parties were performing activities which by their very nature formed an enterprise that was separate and apart from its normal functions."); *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶¶ 38-39 (Ohio Ct. App.) (affirming dismissal where "allegations demonstrate that appellees function in their contractual roles").

may be amenable to jurisdiction in Ohio provides no basis for the Court to exercise jurisdiction over the investment advisors Smith, Graham and Five Mile.

II.     Plaintiffs' Civil Conspiracy Claims Refer to the Funds, not Defendants.

Plaintiffs' argument in support of their civil conspiracy claims largely mimics their arguments in support of their federal RICO claims, concluding summarily that "[t]he Build entities could not carry out the scheme without the financing that Defendants bring to the table." Plaintiffs offer no explanation as to how this Court could conclude, based on the factual allegations in the Complaint, that it was Five Mile and Smith, Graham, rather than the Funds, that "financed" the Build Defendants. Nor could they, because the Loan Agreements—which Plaintiffs and their counsel have been aware of for more than a year—demonstrate conclusively that the Funds, not Defendants, purchased loans from Build. (Robson Decl. Exs. B-1 & B-2 (Doc. 19-3, 19-4).)

III.    Plaintiffs' Declaratory Judgement Claims Have No Connection to Defendants.

Plaintiffs' suggestion that Defendants are proper parties with respect to three declaratory judgment causes of action only underscores the shotgun nature of their pleading. Plaintiffs simply assert, without explanation, that Defendants "are proper parties to the declaratory judgment claims because they have an interest that could be affected." (Doc. 49 at PageID 375.) No such "interest" in the Trust transactions is articulated in the Complaint, and Plaintiffs utterly fail to explain how one could exist. The Funds, not Defendants, purchased loans. While the Funds may have an indirect interest in preceding or related transactions, Defendants do not and are not alleged to have any. *See, e.g.*, *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 908-09 (6th Cir. 1999) ("[W]e believe that the breach of contract to be avoided by the use of the declaratory judgment is normally one where the contemplated conduct or inaction by the plaintiff

5

affects a contract between the plaintiff and the defendant in the declaratory judgment action, not between the plaintiff and a third party.") (quotation omitted).

Because Defendants have no legal interest that can be adjudicated with regard to Plaintiffs' declaratory judgment claims, those claims should also be dismissed as to Defendants.

IV. There is no Basis to Convert Defendants' Motion under Rule 12(d).

As noted in Defendants' opening brief, for purposes of a Rule 12(b) motion to dismiss, a Court need not accept as true allegations expressly contradicted by documentary evidence referenced in the Complaint. *See, e.g.*, *Mulbarger v. Royal Alliance Assocs., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001) (for purposes of Rule 12(b)(6) motion, court "is *not* bound to accept . . . unwarranted inferences, including allegedly inferable 'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint . . . .") (citation omitted) (emphasis in original). Plaintiffs' suggestion that the two Loan Purchase Agreements evidencing who purchased loans from Build "are not referenced in the Complaint" (Doc. 49 at PageID 376) strains credulity. Virtually every reference to the "Permanent Lenders" in the 98-page Complaint describes one or more instance in which Defendants purportedly *purchased a loan* from Build. (*See, e.g.*, Doc. 1 ¶¶104, 107, 165(a)(i), 185.) The Court cannot ignore that, based on the Loan Purchase Agreements, it is indisputable[4] that the Funds bought

---

[4] Plaintiffs' transparent attempt to avoid dismissal by asking the Court to convert Defendants' motion into one for summary judgment—and then stay the motion pending fact discovery—is not permitted on a motion brought under Rule 12(b)(2). For this reason, *Max Arnold & Sons, LLC v. Hailey & Co.*, 452 F.3d 494 (6th Cir. 2006), relied on by Plaintiffs, is unavailing, as the defendant in that case sought dismissal relying solely upon Rule 12(c). *Id.* at 496. And, in *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674 (E.D. Mich. 2013), the court expressly acknowledged its ability to look to evidence outside the pleadings in assessing a jurisdictional motion under Rule 12(b)(1). *Id.* at 680 ("In matters regarding subject matter jurisdiction, the court may look to evidence outside the pleadings.") (citing *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003)). *See also Kaczmarek v. Res-Care, Inc.*, 2013 WL 6276088, at *1-2 (N.D. Ohio Dec. 4, 2013) (noting that court may resolve Rule 12(b)(2) motion "solely on the written submissions and affidavits" and that plaintiff "must still set forth specific facts demonstrating that the Court has jurisdiction.") (citing *Smith v. Ohio Legal Rights Serv.*, 2011 WL 1627322 (S.D. Ohio Apr. 29, 2011)).

Build's loans.  As such, all of Plaintiffs' references to Five Mile, Smith, Graham and the "Permanent Lenders" describe acts or communications undertaken by the Funds, not Defendants.

V. <u>There are No Jurisdictional Allegations in the Complaint Referencing Defendants</u>.

Because all of the allegations in the Complaint relate to the Funds and not Five Mile or Smith, Graham, there is no basis for this Court to conclude that Plaintiffs have adequately alleged personal jurisdiction over Defendants.  *Stenger*, 2016 WL 223681, at *4-5.

Plaintiffs' unsubstantiated assertion that "[t]here are hundreds of emails and documents that establish" (Doc. 49 at PageID 379) a basis to exercise specific jurisdiction over Defendants is simply not true, but underscores the fact that none of those purported communications are included in the Complaint.  And it is evident from the e-mails attached to Mr. Markovits' Declaration that such visits were made in connection with loans purchased by the Funds.  (*See, e.g.*, Markovits Ex. N (Doc. 49-2 at PageID 425) ("[I]f we can see a few properties in our portfolio, that would be very beneficial.")  In all events, "sporadic and insubstantial contacts by themselves cannot support a finding of personal jurisdiction." *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.*, 811 F.2d 967, 970 (6th Cir. 1987) (affirming dismissal for lack of personal jurisdiction where defendant made "several promotional mailings [to Ohio] and one or two visits during five years by [defendant's] personnel.").

Specific jurisdiction over Defendants is further barred by the fiduciary shield doctrine, which "prevents the exercise of personal jurisdiction over a corporate fiduciary whenever an out-of-state individual's contacts with the forum state occur by virtue of his or her acts as a fiduciary." *MMK Group, LLC v. SheShells Co.*, 591 F. Supp. 2d 944, 953 (S.D Ohio 2008) (citing *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)); *see also Weller v. Cromwell Oil. Co.*, 504 F.2d 927, 930-31 (6th Cir. 1974) (finding no personal jurisdiction based on fiduciary shield doctrine and where there were only "conclusory allegations seeking to

pierce the corporate veil in the complaint"). Here, the fiduciary shield prevents the exercise of jurisdiction over Defendants—out-of-state entities that acted only as managers of the Funds and took none of the actions described in the Complaint. And, as discussed above, Plaintiffs do not even attempt to plead sufficient facts to establish that Defendants and the Funds are alter egos. As stated by the Delaware Chancery Court, "formalism matters in the area of entity law." *Paige Capital Mgmt., L.L.C. v. Lerner Master Fund, L.L.C.*, 2011 WL 3505355, at *30 (Del. Chancery Ct. May 25, 2011) (in the absence of veil piercing, must look solely to fiduciary entity for relief). Thus, the exercise of jurisdiction over Defendants could not possibly comport with due process. *Weller*, 504 F.2d at 931.

Insofar as Plaintiffs rely on the RICO statute's nationwide service of process provision as the basis for jurisdiction over Defendants,[5] the argument fails because they have failed to plead any federal RICO violations by Defendants with sufficient particularity to withstand dismissal. *Prakesh v. Altadis U.S.A. Inc.*, 2012 WL 1109918, at *16 (N.D. Ohio Mar. 30, 2012) ("Plaintiff has failed to state a RICO claim on which relief can be granted. For that reason, he cannot utilize RICO's nationwide service provision to secure personal jurisdiction . . . ."). And, while Plaintiffs' opposition purports to concede that the Sixth Circuit has not definitively ruled that nationwide service of process for RICO claims is permitted (Doc. 49 at PageID 377 n.28), the truth is that the Sixth Circuit has never addressed the issue. The decision cited misleadingly by Plaintiffs for the proposition that "the weight of Sixth Circuit precedent supports the acceptance of the national contacts approach" is actually an ERISA decision, which, in dicta, discusses an 11th Circuit RICO case. Given the complete absence of guidance from the Sixth

---

[5] In the *Kattula* decision cited by Plaintiffs in support of their argument for nationwide service, the Court actually declined to apply nationwide service in a federal RICO action. *Kattula v. Jade*, 2007 WL 1695669, at *2 (W.D. Ky. Jun. 8, 2007).

Circuit, this Court should decline to expand the law and subject Defendants to jurisdiction based solely on nationwide service of process.

  VI.  Plaintiffs' Refusal to Substitute the Proper Parties Warrants Dismissal with Prejudice.

Finally, as set forth in the Robson Declaration and Exhibit B-3 thereto (Doc. 19-2, 19-5), Defendants' counsel undertook significant, good faith efforts to allow Plaintiffs to substitute the correct party to this lawsuit and, thereby, avoid the waste of judicial resources necessitated by this Motion. Consistent with Plaintiffs' counsel's refusal to even discuss the issue with Defendants' counsel, however, Plaintiffs fail to offer any explanation as to why they continue to pursue claims against the wrong parties.

It no longer matters whether Plaintiffs got their facts wrong or simply do not understand the relationship between and among an investment advisor, manager, and investment fund, because they have rejected repeated opportunities to correct the obvious mistakes in their pleadings. Nor have they proffered any evidence refuting Defendants' proof that the Funds, not Defendants, have the relevant business relationship with Build. Based upon Plaintiffs' continued refusal to correct their pleading and failure to provide the Court with any legal basis as to why Defendants should remain in this case, substitution of the proper parties should be denied pursuant to Fed. R. Civ. P. 17(a)(3). *Van Sickle v. Fifth Third Bancorp*, 2012 WL 3230430, at *3 (E.D. Mich. Aug. 6, 2012) (granting dismissal and declining to delay dismissal under Fed. R. Civ. P. 17(a)(3)); Charles Alan Wright & Arthur R. Miller, 6A Fed. Prac. & Proc. § 1555 (3d ed. 2018).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the action pursuant to Rule 12(b)(6), 12(b)(2) and should deny substitution of parties under Rule 17(a)(3).

Dated: June 11, 2019

                                              Respectfully Submitted,

                                              FARUKI PLL

                                              By: */s/ Patrick L. Robson*
                                                   Jeffrey T. Cox (0055420)
                                                   Trial Attorney
                                                   110 North Main Street, Suite 1600
                                                   Dayton, OH
                                                   Telephone: (937) 227-3704
                                                   jcox@ficlaw.com

                                                         -and-

                                              Patrick L. Robson*
                                              Jennifer L. Bloom*
                                              HUNTON ANDREWS KURTH LLP
                                              200 Park Avenue
                                              New York, NY 10166
                                              (212) 309-1000

                                              *Attorneys for Defendants Smith, Graham & Co. Investment Advisors, L.P. and Five Mile Capital Partners LLC*

                                              *\* Admitted Pro Hac Vice*

CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019, a copy of the foregoing was filed electronically with the Clerk of Courts for the US District Court for the Southern District of Ohio via the Court's CM/ECF system. Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: June 11, 2019

        FARUKI PLL

By: /s/ Patrick L. Robson
    Jeffrey T. Cox (0055420)
    Trial Attorney
    110 North Main Street, Suite 1600
    Dayton, OH
    Telephone: (937) 227-3704
    jcox@ficlaw.com

    -and-

    Patrick L. Robson*
    Jennifer L. Bloom*
    HUNTON ANDREWS KURTH LLP
    200 Park Avenue
    New York, NY 10166
    (212) 309-1000

    *Attorneys for Defendants Smith, Graham & Co. Investment Advisors, L.P. and Five Mile Capital Partners LLC*

    * Admitted Pro Hac Vice