# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| COMPOUND PROPERTY MANAGEMENT LLC, et al., | : : : | Case No. 1:19-CV-00133 |
| Plaintiffs, | : : | Judge Douglas R. Cole |
| v. | : : | |
| BUILD REALTY, INC. dba GREENLEAF FUNDING, et al., | : : : | |
| Defendants. | : : | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
## AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Compound Property Management, LLC, Leone1, LLC, R & G Cincy Investments, LLC, Pyramid Investment Group, LLC, and Ratio Models, LLC (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated, hereby move this Court for Preliminary Approval of a proposed class action settlement consisting of a $1,300,000 non-reversionary common fund.

In support thereof, Plaintiffs rely upon the following: the Settlement Agreement ("Settlement Agreement" or "S.A.") attached as **Exhibit 1**;[1] the Declaration of W.B. Markovits in Support of Preliminary Approval of Class Action Settlement ("Markovits Decl.") attached as **Exhibit 2**; the Declaration of Amy Lechner in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Lechner Decl.") attached as **Exhibit 3**; the records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court. A Proposed Order Granting Preliminary Approval is also attached.

---

[1] Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

**MEMORANDUM IN SUPPORT**

Plaintiffs respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

**I.    INTRODUCTION**

This is a class action brought by Plaintiffs on behalf of themselves and a Class of all individuals and entities who invested in real property and were named as beneficiaries to a trust created through transactions engaged in by Defendants Build Realty, Inc., Edgar Construction, LLC, Cincy Construction, LLC, McGregor Holdings, LLC, Cowtown Holdings, LLC, Build NKY, LLC, Greenleaf Support Services, LLC, Build SWO, LLC, Gary Bailey, George Triantafilou, G2 Technologies, LLC, GT Financial, LLC, and First Title Agency, Inc. (collectively "Defendants") for the time period of February 1, 2013, through May 24, 2019. Plaintiffs have reached a class action settlement with Defendants which involves pro rata payments from a $1.3 million non-reversionary Common Fund, after deductions for any approved Attorneys' Fees and Expenses, Administration and Notice Expenses, and Service Awards. The estimated payments per Class Member range from $5,000 to $20,000, depending upon the claims rate. Markovits Decl. ¶ 15.

The Settlement provides significant relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). Markovits Decl. ¶¶ 8, 16. The Court should, therefore, preliminarily approve the Settlement Agreement, direct that Notice be sent to all Class Members in the reasonable manner outlined below, approve deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for the class representatives' Service Awards, Attorneys' Fees and Expenses, and set a Final Approval Hearing date.

## II.   BACKGROUND

### A. Procedural History

On February 20, 2019, the above captioned action was filed in the United States District Court for the Southern District of Ohio.[2] Following the Court's May 26, 2020 order dismissing certain parties from this action, Doc. 131, Plaintiffs moved for leave to file an amended complaint. Doc. 145. On December 15, 2020, the Court denied, in part, the motion for leave to amend the complaint and concluded that the claims for damages against certain parties, including Smith, Graham & Co. Investment Advisors, L.P. ("Smith, Graham") and Five Mile Capital Partners ("Five Mile"), should be dismissed from this lawsuit with prejudice. Doc. 153. Plaintiffs subsequently agreed to voluntarily dismiss the remaining claims for declaratory judgment against Smith Graham and Five Mile, which the Court permitted. Docs. 156, 157. However, Plaintiffs expressly reserved the right to appeal the previous involuntary dismissal of claims for damages against Smith Graham and Five Mile. Doc. 156 at PageID# 3256 n.1.

On February 21, 2023, the Court certified a class asserting claims for breach of fiduciary duty and violations of the United States Racketeer Influenced and Corrupt Organizations Act (RICO Act) against Defendants. Doc. 223. The Court further appointed Plaintiffs as class representatives for the class, and it appointed the Finney Law Firm, LLC, and Markovits, Stock & DeMarco, LLC, as class counsel. *Id.*

On April 22, 2024, the Court granted Plaintiffs' Unopposed Motion for Approval of Class Notice. Doc. 251. Thereafter, Plaintiffs created a case website and caused all notices to be mailed and/or emailed on or before May 22, 2024. Doc. 255-1. The Notices informed Class Members of

---

[2] The same day the above captioned case was filed, a substantially similar putative class action, filed November 2, 2017 in the Hamilton County Court of Common Pleas—Case No. A1700624—was voluntarily dismissed.

3

their right to opt out of the certified class and explained how to exercise this right (should the Class Member choose). Doc. 255-1 ¶ 4. Class Counsel estimates that it was able to deliver direct notice to 94.77% of the estimated total of 288 Class Members. *Id.* ¶ 5. After the successful notice program, Class Counsel only received one request for exclusion from the certified class. *Id.* ¶ 7. A copy of this opt-out was filed with the Court as Exhibit A to the Declaration of Christopher P. Finney Regarding Notice Program. Doc. 255-1.

The parties aggressively pursued discovery in the state and federal court actions, including voluminous written discovery and numerous depositions. *See, e.g.,* Docs. 176-182, 185-190. Once this action was refiled in federal court, the parties continued with discovery, engaged in numerous discovery conferences with the Court, and litigated several discovery disputes resulting in Court orders. *See, e.g.,* Docs. 98-104, 109, 110, 112-116, 125, 128-130; *see also* Minute Entry (Jan. 3, 2020); Minute Entry (Jan. 9, 2020); Minute Entry (May 28, 2020); Minute Order (Sept. 30, 2020); Minute Entry (Mar. 22, 2021); Minute Entry & Notation Order (July 7, 2021); Minute Entry (Jan. 19, 2022); Minute Entry (Oct. 18, 2023); Minute Entry (July 16, 2024). The factual record established through the parties' discovery efforts was described at length in the Court's order granting class certification. Doc. 223. Through this discovery, as well as informal financial discovery provided by the Defendants, the parties were able to effectively evaluate the strengths and weaknesses of this case, including the Defendants' ability to satisfy a judgment should a jury rule in favor of the claims alleged.

On April 10, 2024, the parties entered mediation under the guidance of Magistrate Judge Stephanie K. Bowman. (*See* Minute Entry (April 10, 2024)). The matter was not resolved during this mediation, but the parties agreed to continue negotiations. (*See id.*). The parties continued to negotiate under Judge Bowman's supervision but were unsuccessful in reaching a resolution. (*See*

4

Minute Entry (June 13, 2024)). On June 13, 2024, Judge Bowman ordered this matter back to the docket of Judge Cole. (*Id*.).

On July 16, 2024, the Court held a discovery conference during which the issue of settlement was again raised. *See* Minute Entry (July 16, 2024). During this status conference, the parties agreed to renew mediation under the supervision of Judge Cole. *Id*. On August 23, 2024, the Court held a mediation session that was attended by representatives for all remaining Defendants. *See* Minute Entry (Aug. 23, 2024). During this mediation session, the parties discussed the framework of a potential resolution. Although a settlement in principle was not reached that day, the parties continued negotiations under the guidance of the Court. On October 16, 2024, the Court submitted a mediator's proposal. After some additional negotiation based upon that mediator's proposal, the Parties reach an agreement in principle on October 30, 2024.

The Class Representatives and Class Counsel have thoroughly reviewed and analyzed this case by a number of means, including but not limited to extensive discovery, review of applicable law, and informal review of Defendants' financial information.

### B. Summary of Settlement Terms

#### 1. Settlement Benefits and Class

Under the proposed settlement, Defendants will pay monies to create a non-reversionary $1,300,000 non-reversionary Common Fund. S.A. ¶¶ 27, 75. Class Members will receive pro rata payments from this Common Fund after deductions for Attorneys' Fees and Expenses, Administration and Notice Expenses, and Service Awards. *Id.* ¶ 74.

The proposed Class definition is: all Plaintiffs and all other persons and entities in Ohio and Kentucky, individually and collectively, that invested in real property and were named as beneficiaries to a trust created through a real estate transaction engaged in by, through, or with any

of the Defendants named herein during the Class Period. *Id.* ¶ 22. "Class Period" means from February 1, 2013, through May 24, 2019. *Id.* ¶ 25. Excluded from the Class are: Defendants and their past or present officers, employees, agents, directors, lawyers, and immediate family members; judicial officers and their immediate family members and associated Court staff assigned to this case; and any entities owned or controlled by an individual excluded from the Class. *Id.* ¶ 22.

### 2. Scope of the Release

In exchange for consideration above, Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the claims at issue in this Litigation. *Id.* ¶¶ 51-53, 106-109.

### 3. The Notice and Administration Plan

Under the Settlement Agreement, Simpluris shall act as the Settlement Administrator and Administration and Notice Expenses shall be paid from the Common Fund. *Id.* ¶ 57; *see also* Lechner Decl. ¶¶ 4-19. Defendants shall advance a non-refundable amount of Ten Thousand Dollars ($10,000) from the Common Fund toward these expenses upon Preliminary Approval. S.A. ¶¶ 27, 75, 88. The Settlement Administrator shall provide any necessary CAFA Notice within ten (10) days after this Motion is filed with the Court. *Id*. ¶¶ 18, 86; *see also* Lechner Decl. ¶ 6.

The Notice Date shall be the Court-ordered deadline by which the Settlement Administrator shall email and mail, to the extent feasible, notices in a form substantially similar to Exhibits A-C to the Settlement Agreement. *See* S.A. ¶¶ 21, 38, 41, 62, 65-66, 124. The Notices will clearly and concisely inform Class Members of the proposed Settlement and the Settlement Benefit and instruct Class Members how they may make a claim, opt out of the Settlement, or object to the Settlement, including the legal effect of each choice. *See id.*, Exs. A-C.

No later than this Notice Date, the Settlement Administrator shall establish the Settlement Website with information the Parties jointly agree to post concerning the nature of the case and the status of the Settlement, including relevant pleadings as available such as the Amended Complaint, papers in support of preliminary and final approval of the Settlement, and Class Counsel's Fee Application, plus relevant orders of the Court, within two business days of filing. *Id.* ¶ 65(b)(ii); *see also* Lechner Decl. ¶ 11.

### 4. Attorneys' Fees, Expenses and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees not to exceed one third of the Common Fund as of the date when the Settlement Administrator is prepared to distribute funds (i.e., after the scheduled date of First Title's final payment), and an additional fee of any payments received by Defendants following that date. *Id.* ¶¶ 74, 75(c), 102-103. The motion will be filed no later than 14 days prior to the Objection Deadline, pursuant to Rule 23(h) and Rule 54(D)(2). *Id.* ¶ 101. The Settlement Agreement further provides, subject to Court approval, for a payment of up to $10,000 to each Plaintiff as Service Awards for their services in representing the Class. *Id.* ¶ 102. The effectiveness of the Settlement Agreement is not contingent on the approval of any attorneys' fees or service awards. *Id.* ¶¶ 102, 105.

### III. LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Fed. R. Civ. P. 23(e) provides three steps for approving a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369,

372 (S.D. Ohio 2006); *see also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015). Plaintiffs request that the Court preliminarily approve the proposed Settlement.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009), citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).[3] The Court should preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[4]

---

[3] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 1:04-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

[4] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable.").

## IV. ARGUMENT

### A. The Proposed Settlement Satisfies the Standard for Preliminary Approval

#### 1. The Proposed Settlement Is the Product of Arm's-Length Negotiations between Experienced Professionals

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have knowledge of the legal and factual issues of this case. *See* S.A. ¶¶ 5-7. Settlement negotiations took place over the course of several months between counsel experienced with handling class action cases. *See id.* ¶¶ 6-7. No collusion or illegality existed during the settlement process, which was overseen by the Court. *See id*. Class Counsel, without any opposition from Defendants, support the Settlement as fair and reasonable, and all agree that it was reached at arm's-length. *Id.* ¶ 10; Markovits Decl. ¶ 7. These facts weigh heavily in favor of preliminary approval.

#### 2. The Proposed Settlement Falls within the Range of Reasonableness and Warrants Issuance of Notice and a Final Approval Hearing

Although Plaintiffs believe that the claims asserted in the Litigation are meritorious and the Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the Settlement

9

is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, the expense and likely duration of the litigation, and in particular the ability to collect any award from Defendants. Markovits Decl. ¶ 8; *see also Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted).

### 3. The Proposed Settlement Has No Obvious Deficiencies

There are no grounds to doubt the fairness of the proposed settlement and there are no other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). Plaintiffs, like all other Class Members, will receive their settlement benefit of a pro rata payment (which is projected to be substantial) from the Common Fund. Attorneys' fees, expenses, and service awards will be left to the discretion of the Court.

With respect to attorney fees, "Typically, the percentage awarded ranges from 20 to 50 percent of the common fund created." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001); *see also In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (explaining same); *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *12 (S.D. Ohio Jan. 26, 2011) (same); *Lott v. Louisville Metro Govt.*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *3 (W.D. Ky. Mar. 17, 2023) (same). Class Counsel have agreed to limit their attorneys' fee request to one third of the Common Fund as of the date when the Settlement Administrator is prepared to distribute funds, plus an additional fee of any payments received from Defendants following that date. *See* S.A. ¶¶ 74-75, 102.

Class Counsel's fee request will also be justified if analyzed under a lodestar crosscheck. To date, Class Counsel has engaged in extensive litigation, including motions to dismiss and a

successful motion for class certification. During this time, Class Counsel accrued a lodestar totaling millions of dollars, and Class Counsel will continue to accrue significant future lodestar navigating this matter through final approval and overseeing settlement administration. *See id.* ¶¶ 5, 13-14. The requested award from the Common Fund will result in a significant negative multiplier when compared to Class Counsel's lodestar. *See id.*

The Settlement Agreement further provides, subject to Court approval, for a payment of up to $10,000 to each Plaintiff as Service Awards for their services in representing the Class. *Id.* ¶ 102. *Compare* S.A., ¶¶ 54, 100-105 *with Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2023 WL 8811499, at *13 (S.D. Ohio Dec. 20, 2023) ("Because Rule 23 does not prohibit these awards categorically and because the Settlement Agreement does not guarantee any particular amount of such an award here, the Court finds the Settlement Agreement treats class members equitably relative to each other."). Because Plaintiffs and Class Counsel will move for an award of attorneys' fees and Service Awards at least fourteen (14) days before the objection and opt out deadlines, the Court will be able to consider these requests, the supporting documents, and the Class's response to them, if any, when evaluating whether to grant final approval of the class action settlement.

For the foregoing reasons, the Court should preliminarily determine that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

### B. Certification Using the Refined Class Definition is Appropriate

On February 21, 2023, the Court certified a class and subclass asserting claims for breach of fiduciary duty and violations of the United States Racketeer Influenced and Corrupt Organizations Act (RICO Act) against Defendants. Doc. 223. The Class was defined as:

> Plaintiffs and all other persons and entities in Ohio and Kentucky, individually and collectively, that invested in real property and were named as beneficiaries to a trust created through a real estate transaction engaged in by, through, or with any of the

11

> Defendants named herein, using the Build Scheme further described and defined herein, for the longest period allowed by law (the "Class").

Class Counsel propose a slight refinement of the certified class, as follows:

> Plaintiffs and all other persons and entities in Ohio and Kentucky, individually and collectively, that invested in real property and were named as beneficiaries to a trust created through a real estate transaction engaged in by, through, or with any of the Defendants named herein during the Class Period. "Class Period" means from February 1, 2013, through May 24, 2019. Excluded from the Class are: Defendants and their past or present officers, employees, agents, directors, lawyers, and immediate family members; judicial officers and their immediate family members and associated Court staff assigned to this case; and any entities owned or controlled by an individual excluded from the Class.

S.A. ¶¶ 22, 25. The proposed refinements: i) remove any ambiguity caused by using the phrase "Build Scheme"; ii) specify dates for the Class Period; and iii) provide for appropriate exclusions.

The refinements have no effect upon the prior certification analysis conducted by the Court, which need not be revisited. Doc. 223. The Court is free to refine a class definition as appropriate, and Class Counsel believe it is appropriate to do so in this case to avoid ambiguity in settlement administration. *See* Federal Rule of Civil Procedure 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment…."); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions….").

### C. The Proposed Form and Manner of Notice Is Reasonable and Should Be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To

satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009), quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008).

"Neither Rule 23 nor due process requires that every class member actually receives notice. Instead, 'notice suffices if it is reasonably calculated to reach the absent parties.'" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 927 (N.D. Ill. 2022), quoting 3 William B. Rubenstein, *Newberg on Class Actions* § 8:36 (5th ed. 2011) (updated 2021). According to the Federal Judicial Center, notice to at least seventy percent of the class generally meets this standard. *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022), citing Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Dec. 14, 2024).

The Notice plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Settlement Notice will be disseminated to all persons and entities who fall within the definition of the Class and whose names and email addresses or mail addresses can be identified with reasonable effort from Defendants' records, and through databases tracking nationwide addresses and address changes. Based on the number of notices returned undeliverable, Class Counsel estimate that they were previously able to reach 94.77% of Class Members with direct notice of the Court's class certification decision. *See* S.A. ¶ 4, citing Doc. 255-1 ¶ 5. Class Counsel anticipates that the notice of the Settlement will be even more successful with the help of the Settlement Administrator, which will run skip traces on addresses as necessary to reach absent Class Members. Markovits Decl. ¶ 10; Lechner Decl. ¶¶ 8-9.

13

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than one third of the Common Fund as it exists at the time payments are distributed, plus any fees paid after that date. *See* S.A., Exs. A-B. The proposed Notice Plan complies with Rule 23 and due process because it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if a Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries about the Settlement. Fed. R. Civ. P. 23(c)(2)(B). *See* S.A., Exs. A-B.

Thus, the Notices "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of notice, which includes individual notice by email and/or mail to all those who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies due process and Rule 23. *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the Notice plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### D.  The Court Should Provide a Schedule Leading up to the Fairness Hearing

Plaintiffs request that the Court set a schedule, leading up to a Fairness Hearing, that would include, *inter alia*, deadlines for notice to Class Members; for Class Members to object to the settlement, to opt out of the settlement, and to make claims under the settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses. A proposed schedule is included in the proposed Preliminary Approval Order. At the Fairness Hearing, the Court may hear all evidence and oral argument necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Terence R. Coates (0085579)
Justin C. Walker (0080001)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*
*dgould@msdlegal.com*

and

        Christopher P. Finney (0038998)
        Casey Taylor (0095966)
        **FINNEY LAW FIRM, LLC**
        4270 Ivy Pointe Blvd., Suite 225
        Cincinnati, Ohio 45245
        Telephone: (513) 943-6665
        Facsimile: (513) 943-6669
        *chris@finneylawfirm.com*
        *casey@finneylawfirm.com*

        *Co-Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2025, I served the foregoing upon all parties through their counsel of record by filing it electronically with the Court's CM/ECF system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
