# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| COMPOUND PROPERTY MANAGEMENT LLC, et al., | : | Case No. 1:19-CV-00133 |
| | : | |
| Plaintiffs, | : | Judge Douglas R. Cole |
| | : | |
| v. | : | |
| | : | |
| BUILD REALTY, INC., dba GREENLEAF FUNDING, et al., | : | |
| | : | |
| Defendants. | : | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to this Court's Notation Order dated February 25, 2025, Plaintiffs Compound Property Management, LLC, Leone1, LLC, R & G Cincy Investments, LLC, Pyramid Investment Group, LLC, and Ratio Models, LLC (collectively "Plaintiffs" or "Class Representatives"), submit this Memorandum addressing whether the proposed Settlement Agreement that provides identical payments to each class member meets the requirement under Rule 23(e)(2)(D) to "treat[] class members equitably relative to each other." While Plaintiffs believe that the currently proposed plan satisfies the standard of treating class members equitably relative to each other, they understand the Court's concerns and therefore have developed a proposed allocation method that takes into account differing financial harms. Defendants do not oppose this change. With the Court's approval, the Parties will modify the Settlement Agreement and proposed notices to incorporate Plaintiffs' recommended change.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e)(2)(D) requires that the Court consider whether the proposed settlement agreement "treats class members equitably relative to each other." A possible "red flag" is a form of relief that favors some class members at the expense of others, but "the inference that differential treatment is the sign of an unfair settlement can be rebutted by evidence that the class members should be treated differently because they are situated differently." 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed.). In making its determination, the Court may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims. . . ." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments.

In some cases, it may be equitable to craft distribution plans where claimants receive *pro rata* distributions proportional to their losses. *See Plagens v. Deckard*, No. 1:20-CV-2744, 2024 WL 2080662, at *10 (N.D. Ohio May 9, 2024) (granting final approval of settlement). In other situations, however, it may be equitable to craft distributions plans that treat each claimant equally, where any attempt to craft a more discriminating plan would be "costly, complex, burdensome and not necessarily more fair." *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333, 2013 WL 12333442, at *91 (N.D. Cal. Jan. 8, 2013), *R. & R. adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*, 2014 WL 12879520 (June 27, 2014).

## THE EXISTING ALLOCATION PLAN

The existing allocation plan, which calls for equal *pro rata* distributions among the claimants, is based primarily on two factors reflected in the Expert Witness Report of Steven M.

2

Brunner, CPA, CVA, MAFF ("Report"), which was served upon Defendants on June 27, 2024.[1] First, many of the types or categories of damages alleged for Class Members were uniform (e.g. down payment, credit report, delivery service/wire fee, document preparation fee, deed preparation/attorney fees, administrative fee). Second, for a number of transactions (51 of the randomly-selected 140) documents necessary to calculate certain types of damages were not produced by Defendants. This would make accurate calculation of variable damages impossible in some cases, and would make the process "complex, burdensome, and not necessarily more fair." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *91.

## THE REVISED PROPOSED PLAN

Acknowledging the concern of relative equity based on differing damages, however, Class Counsel, in conjunction with Mr. Brunner, have developed a revised allocation plan, to which Defendants have no objection. This revised plan is based in part upon the Report. In his Report, Mr. Brunner estimated the following damages based on the 74 exemplar transactions he reviewed:

1. *Purchase Price Mark-Up*[2] *and Interest Rate Mark-Up*[3]

These damages were variable. The average Purchase Price Mark-Up was $6,284.04, and the average Interest Rate Mark-Up was $4,444.93.

2. *Alternative Damages*

Mr. Brunner calculated three additional measures of damages, presented in the alternative due to their overlapping nature.

---

[1] For the Report, Mr. Brunner first examined 140 randomly-chosen transactions, which was narrowed to a sample size of 74 primarily based on missing documentation for some transactions. The Report also addressed Defendants' treatment of potential escrow accounts and contains confidential information. At the Court's request, the parties can either provide it for *in camera* review or file a redacted version.

[2] The mark-up from the buy-side to the sell-side transactions.

[3] The 3% margin on funds loaned to the Investors above the cost of funds.

3

    *a. "Down Payment" Damages*

This category was based on the $10,000 "down payment" collected from Investors which Plaintiffs alleged was not a down payment. These damages were uniform.

    *b. Closing Cost Damages*

This category was based on closing costs Plaintiffs alleged to be improper, including: closing cost reimbursement (from buy side), a loan origination fee, a credit report fee, a delivery service/wire fee, a document preparation fee, interest on unfunded amounts, deed preparation/attorney fees, title insurance, additional wire services, and an administrative fee. The average total of these fees was $11,060.77.

    *c. Damages in Excess of Closing Cost Cap*

This category of damages was based on contractual caps on closing cost reimbursement that were exceeded in the transactions. The average difference was $7,639.57 per transaction.

Based on the above, Plaintiffs propose a modified allocation plan that calculates for each claimant their Purchase Price Mark-Up damages (which are variable),[4] then adds to that "down payment" damages of $10,000 (which are uniform), and uses the total to calculate their pro rata share.

The basis for the proposal is primarily that it is easily managed, in that it may largely be accomplished even if not all documents relating to a particular transaction were produced by Defendants. Even if, for example, Defendants did not produce documents sufficient to determine the Purchase Price Mark-Up for a particular address, Class Counsel should be able to obtain that

---

[4] Defendants generally marked up the purchase price by an amount in the thousands, ending with "900," with $4,900 being the most common amount. For example, of the 74 exemplar transactions reviewed by Mr. Brunner, the highest distribution of markups included: $4,900 (16); $9,900 (6); $2,900 (6); $7,900 (5); $6,900 (5). The highest markups were these three: $21,900 (2); $28,900 (1).

4

information through the appropriate County Recorder's office. Class Counsel believe this is the only category of variable damages where this holds true. Another reason for the proposal is that the Purchase Price Mark-Up and the "Down Payment" damages are, in Class Counsel's opinion, two of Plaintiffs' strongest claims for damages.

Accordingly, the formula (PPMU + DP) / (PPMU + DP for all claimants) for each claimant would identify each claimant's percentage of the total for all the claimants. Multiplying that percentage against the total amount available for distribution would provide each claimant's allocation. If there is an instance where the PPMU for a claimant is unknown, Plaintiffs would use the mean PPMU of the claimants for which the PPMU is known.

Here is an example of this formula in application:

| Total Distribution | $10,000 | | | | |
|---|---|---|---|---|---|
| | **DP** | **PPMU** | **Total Damages** | **% Total** | **Allocation** |
| LLC1 | $10,000 | $4,000 | $14,000 | 23.33% | $2,330 |
| LLC2 | $10,000 | $7,500 | $17,500 | 29.17% | $2,920 |
| LLC3 | $10,000 | $3,500 | $13,500 | 22.50% | $2,250 |
| LLC4 | $10,000 | $5,000* | $15,000 | 25.00% | $2,500 |
| | | | $60,000 | 100% | $10,000 |
| | *LLC4's PPMU could not be determined, so its PPMU was placed at the mean of all other claimants. | | | | |

The proposed formula treats class members equitably to each other because it accounts for variability in damages, avoids to a large extent the issue of missing documentation, and is not unduly complex or burdensome (*i.e.*, is easy to manage).

While the Settlement Agreement and notices discuss Class Members submitting "a Valid Claim," Class Counsel also believe that further clarification should take place, both in the

5

Settlement Agreement and the notices, limiting each Class Member to a claim for their first qualifying transaction. Those engaging in more than one transaction are subject to the argument that they "knew or should have known" of many of the issues based on their first transaction, and the limitation of claims to the first transaction is the most equitable.

To the extent any class member believes its individual damages exceed the amount afforded under this Settlement, it may exercise its right to opt out of the settlement and pursue its individual claim(s). *Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (overruling a class action settlement objection claiming that the individual payments are too low in part because the class member had the ability to opt out of the settlement); *Rosado v. Ebay Inc.*, No. 5:12-CV-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016) (noting that if a class member "believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017) (finding an objection to a class action settlement unpersuasive, in part, because the class member was free to opt out if he or she believed that the settlement amount was too low).

## CONCLUSION

Class Counsel thank the Court for bringing this issue to their attention and ask that the Court approve the revised plan of allocation. Should the Court do so, documents will be revised to appropriately reflect this change.

    Respectfully submitted,

    */s/ W.B. Markovits*
    W.B. Markovits (0018514)
    Paul M. De Marco (0041153)
    Terence R. Coates (0085579)

6

Justin C. Walker (0080001)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*
*dgould@msdlegal.com*


Christopher P. Finney (0038998)
Casey Taylor (0095966)
**FINNEY LAW FIRM, LLC**
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
Telephone: (513) 943-6665
Facsimile: (513) 943-6669
*chris@finneylawfirm.com*
*casey@finneylawfirm.com*

*Co-Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2025, I served the foregoing upon all parties through their counsel of record by filing it electronically with the Court's CM/ECF system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

>*/s/ W.B. Markovits*
>W.B. Markovits (0018514)