## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| COMPOUND PROPERTY MANAGEMENT, LLC, et al., | : : : | Case No. 1:19-CV-00133 |
| Plaintiffs, | : : | Judge Douglas R. Cole |
| v. | : : | |
| BUILD REALTY, INC., et al., | : : | |
| Defendants. | : | |

**<u>PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Under Fed. R. Civ. P. 23(e), Plaintiffs Compound Property Management, LLC, Leone1, LLC, R & G Cincy Investments, LLC, Pyramid Investment Group, LLC, and Ratio Models, LLC (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of all others similarly situated, hereby move this Court for final approval of the preliminarily-approved class action settlement consisting of a $1,300,000 non-reversionary common fund.

In support thereof, Plaintiffs rely upon the Declaration of W.B. Markovits in Support of Final Approval of Class Action Settlement ("Markovits Decl.") attached as **<u>Exhibit 1</u>**; the Declaration of Meagan Brunner of Simpluris, Inc., Regarding Notice and Settlement ("Simpluris Decl.") attached as **<u>Exhibit 2</u>**; the Settlement Agreement (Doc. 257-1), as amended in the Amended Settlement Agreement (Markovits Decl. ¶ 3, Ex. 1-A); and the papers and pleadings that have been submitted to the Court in this action.[1]

A Proposed Order Granting Final Approval (which includes proposed language granting Plaintiffs' pending fee motion, Doc. 260) is submitted herewith as **<u>Exhibit 3</u>**.

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning assigned to them in the Settlement Agreement.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

This is a class action brought by Plaintiffs on behalf of themselves and a Class of all individuals and entities who invested in real property and were named as beneficiaries to a trust created through transactions engaged in by Defendants Build Realty, Inc., Edgar Construction, LLC, Cincy Construction, LLC, McGregor Holdings, LLC, Cowtown Holdings, LLC, Build NKY, LLC, Greenleaf Support Services, LLC, Build SWO, LLC, Gary Bailey, George Triantafilou, G2 Technologies, LLC, GT Financial, LLC, and First Title Agency, Inc. (collectively "Defendants") for the time period of February 1, 2013, through May 24, 2019.

The Court preliminarily approved the proposed class action settlement on March 31, 2025. Doc. 259. What has transpired in the intervening months has not merely confirmed the Court's preliminary assessment, but rather decisively validated it. The approved notice program reached over 98% of Class Members. Approximately 46.85% of Class Members submitted valid claims, zero Class Members objected, and zero Class Members opted out of the settlement. These metrics—particularly the exceptionally high claim rate and complete absence of opposition— demonstrate that the $1.3 million non-reversionary settlement fund providing average payments of approximately $3,407.30 to $3,656.06 per claimant represents fair, reasonable, and adequate relief that the Class overwhelmingly supports. Simpluris Decl. ¶¶ 30, 31. Accordingly, the Court should grant final approval so that Class Members can receive their long overdue relief.

### II.   NATURE OF SUIT AND PROCEDURAL BACKGROUND

On January 14, 2025, Plaintiffs moved for preliminary approval of the proposed class action settlement. Doc. 257. Thereafter, the Court ordered the Parties to file supplemental briefing addressing concerns about equitable treatment of Class Members under the proposed pro rata

benefit structure. Not. Order (Feb. 25, 2025). Following this order, the Parties agreed to amend the Settlement Agreement so that, if approved, benefits will be paid out under a formula (as explained in more detail below) that considers individual Class Member circumstances, as opposed to straight pro rata distributions. *See* Doc. 258.

On March 31, 2025, the Court granted preliminary approval of the Settlement Agreement (with amendments described in Plaintiffs' supplemental memorandum, Doc. 258) and ordered the Parties to proceed with the proposed notice and claim administration program. *See* Doc. 259. Thereafter, the parties executed an Amended Settlement Agreement memorializing the changes to the Settlement required by the Court's Preliminary Approval Order. *See* Markovits Decl. ¶ 3, Ex. 1-A. On June 20, 2025, Plaintiffs filed their motion for attorneys' fees, expenses, and class representative service awards, which remains pending. *See* Doc. 260.[2]

## III.   TERMS OF THE PROPOSED CLASS ACTION SETTLEMENT

### A.  Settlement Benefits and the Class

Under the proposed settlement, Defendants will pay monies to create a non-reversionary $1,300,000 Common Fund for the benefit of the Class Members. S.A., Doc. 257-1 ¶¶ 27, 75; *see also* Markovits Decl., Ex. 1-A (Amended S.A.). The Class is defined as:

> Plaintiffs and all other persons and entities in Ohio and Kentucky, individually and collectively, that invested in real property and were named as beneficiaries to a trust created through a real estate transaction engaged in by, through, or with any of the Defendants named herein during the Class Period. "Class Period" means from February 1, 2013, through May 24, 2019. Excluded from the Class are: Defendants and their past or present officers, employees, agents, directors, lawyers, and immediate family members; judicial officers and their immediate family members and associated Court staff assigned to this case; and any entities owned or controlled by an individual excluded from the Class.

---

[2] Plaintiffs' previous filings describe the additional factual and procedural background of this case in exhaustive detail. *See* Docs. 257, 258, 260. Many of the relevant facts are also summarized in the Court's order granting preliminary approval, Doc. 259.

Doc. 259 at PageID# 10916.

Those meeting the criteria of the class definition will receive payments based on a formula that calculates benefits based on each claimants' purchase price mark up, as well as their down payment. *See* Doc. 258; Markovits Decl., Ex. 1-A. That formula calculates for each claimant their Purchase Price Mark-Up ("PPMU") damages (which are variable), then adds to that down payment ("DP") damages of $10,000 (which are uniform) and uses the total to calculate the claimant's pro rata share.[3] *See* Doc. 258 at PageID# 10895; Markovits Decl., Ex. 1-A. That pro rata share is calculated as follows: (PPMU + DP) / (PPMU + DP for all claimants). *See* Doc. 258 at PageID# 10894-96; Markovits Decl., Ex. 1-A. In other words, "[t]he formula basically assigns to each class member a portion of the Common Fund that reflects their share of the total harm suffered by all class members." Doc. 259 at PageID# 10925.

**B. Scope of the Release**

In exchange for the consideration above, Class Members agree broadly to "forever release and discharge" Defendants "from any and all claims, demands, actions, or causes of action of every kind and description, … that the [Class Member] had or has …, or may ever have[.]" Doc. 257-1, #10830–31. That said, only those Defendants that have fully satisfied their financial obligations under the Settlement will benefit from that release. *Id.* at PageID# 10830. Furthermore, the Settlement Agreement does not release Defendants who were previously involuntarily dismissed from this lawsuit. *See id.* at PageID# 10808; *see also* Doc. 153 (order granting in part and denying in part motion for leave to amend). Nor does it release individuals who the Court did not allow to be added to an amended complaint. *See id.* at PageID# 10808; Doc. 153.

---

[3] The PPMU measure is defined as "[t]he mark-up from the buy-side to the sell-side transactions," which reflects the amount by which each class member overpaid Defendants for their investment properties above market price. *See* Doc. 258, #10894 n.2.

## IV.    EXECUTION AND EFFECTIVENESS OF NOTICE PLAN

### A.  Notice Program

The Settlement Administrator (Simpluris) has executed the notice campaign and claim administration program in accordance with the Settlement Agreement and this Court's order granting preliminary approval. Markovits Decl. ¶ 4.[4] Following the Court's order, the parties revised the notices (using the Court's order for guidance) and, on May 5, 2025, mailed and emailed direct notice to all Class Members for whom the parties had mailing and email addresses. *See* Simpluris Decl. ¶¶ 7, 14. Following direction from Class Counsel, Simpluris then mailed an additional round of direct notice on July 7, 2025 to all Class Members who had not yet submitted claim. *Id.* ¶ 10; *see also* Markovits Decl. ¶ 5. At Class Counsel's direction, Simpluris emailed additional rounds of direct notice to Class Members on June 2, 2025, July 7, 2025, and July 21, 2025. Simpluris Decl. ¶¶ 15-17; *see also* Markovits Decl. ¶ 5. The long and short form notices approved by the Court were also posted to the settlement website, which has remained active since May 5, 2025. Simpluris Decl. ¶ 19.

### B.  Effectiveness of Notice

Through the Notice program, Simpluris disseminated direct notice to all Class Members identified on the class list. Simpluris Decl. ¶ 5. During the ninety (90) day claim period, Simpluris received 131 valid claims for benefits. *Id.* ¶ 24. An additional three claims were received after the claim deadline, which were otherwise valid except for being untimely. *Id.* The Parties have conferred and, subject to Court approval, have agreed to treat these untimely claims as valid (so long as they met all other requirements for validity). *Id.*; *see also* Markovits Decl. ¶ 7. Including

---

[4] The Settlement Administrator provided the necessary CAFA Notice to federal and state officials on January 27, 2025. Simpluris Decl. ¶ 4.

these otherwise valid late claims, there are 134 valid claims, representing a valid claim rate of approximately 46.85%. Simpluris Decl. ¶ 24. Furthermore, to date, neither Simpluris nor Class Counsel have received any opt outs or objections. *Id.* ¶ 22.

Simpluris has informed Class Counsel that their fees and expenses administering this case are $13,000, which Plaintiffs request the Court approve payment of from the common fund. *See id.* ¶ 25.

## V.     ARGUMENT

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). At final approval, courts "evaluate the fairness of the proposed settlement." *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-CV-776, 2025 WL 1637686, at *5 (S.D. Ohio June 10, 2025) (Cole, J.). Typically, courts must also "determine whether to certify the settlement class." *Id.* However, in this case, the Court has already granted class certification. *See* Doc. 223 (granting class certification over the Defendants' objection); Doc. 259 at PageID# 10916-17 (amending the class definition). Therefore, the Court may turn immediately to the proposed settlement's fairness.

"Before the Court can finally approve a proposed settlement, the Court must hold a hearing and find that the settlement is 'fair, reasonable, and adequate.'" *In re Cinfed*, 2025 WL 1637686, at *7 (quoting Fed. R. Civ. P. 23(e)(2)). "To assess fairness, the Court considers whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other." *In re Cinfed*, 2025 WL

1637686, at *7 (citing Fed. R. Civ. P. 23(e)(2)).[5] Applying these factors, the Court should grant final approval of the proposed settlement.

## A. Adequacy of Representation

The Court should find that the Class was adequately represented for the same reasons explained in its order granting class certification (Doc. 223 at PageID# 10541), as well as its order preliminarily approving this settlement. Doc. 259 at PageID# 10917-18.[6] Additionally, the settlement terms and the executed notice program were adequate. In evaluating whether to grant final approval, courts consider the "adequacy of representation in relation to the settlement terms and notice process." *Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2023 WL 8811499, at *11 (S.D. Ohio Dec. 20, 2023). Generally, notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "Neither Rule 23 nor due process requires that every class member actually receives notice. Instead, 'notice suffices if it is reasonably calculated to reach the absent parties.'" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 927 (N.D. Ill. 2022), quoting 3 William B. Rubenstein, *Newberg on Class Actions* § 8:36 (5th ed. 2011) (updated 2021).

---

[5] While Sixth Circuit precedent identifies seven factors for evaluating settlements, *see Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), this Court has observed that these factors are "largely subsumed in the 2018 amendments to Rule 23," with each *International Union* factor finding a home within the current Rule 23(e)(2) framework. *Hawes v. Macy's Inc.*, No. 1:17-CV-754, 2023 WL 8811499, at *10 (S.D. Ohio Dec. 20, 2023). Accordingly, Plaintiffs address the Rule 23(e)(2) factors "in sufficient detail to also satisfy *International Union*." *Id.*

[6] As recognized in those orders, Class Counsel have spent the better part of a decade vigorously litigating this case in state and federal court on behalf of Plaintiffs and Class Members, ultimately reaching a settlement that provides substantial compensation to all valid claimants, and that also leaves open the possibility of additional compensation from the defendants who were involuntarily dismissed from this action. *See* S.A., Doc. 257-1 at PageID# 10808 (clarifying that involuntarily dismissed defendants are not released). The Court's prior findings should not be disturbed.

The comprehensive notice plan designed by Class Counsel and executed by Simpluris provided the best notice practicable under the circumstances. As part of this program, Simpluris established a comprehensive class website and disseminated multiple rounds of direct notice to Class Members by mail and email. *See* Simpluris Decl. ¶¶ 6-18. Simpluris estimates that through this notice program, approximately 98% of class members received at least one form of direct notice (*id.* ¶ 18), which more than satisfies the requirements of Rule 23 and due process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022), citing Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited Oct. 1, 2025) (explaining that at least 70% of the class should receive notice). The effectiveness of the notice program is reflected by the high valid claim rate that was ultimately achieved. *See* Markovits Decl. ¶ 7.

The notices also informed Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if a Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of proposed Class Counsel fees; and (7) how to make inquiries about the Settlement. *Compare* Simpluris Decl. ¶¶ 8, 13, 19-20, Exs. B, C, D *with* Fed. R. Civ. P. 23(c)(2)(B).

This adequacy is confirmed by the reaction of absent class members, as there were no objections or requests to opt-out of the Settlement. *Compare with Hawes*, 2023 WL 8811499, at *11 (finding adequacy where only "59 class members opted out of a class of around 2.5 million

people"); *In re Cinfed*, 2025 WL 1637686, at *8 ("[T]he reaction of absent class members further supports the adequacy of class counsel's representation. No class members have opted out of the class. And only one class member has objected.") (internal citation omitted); *BleachTech LLC v. United Parcel Serv., Inc.*, No. 14-12719, 2022 WL 2835830, at *3 (E.D. Mich. July 20, 2022) (noting that absence of objections was "a clear indication that the Settlement Class Members support the Settlement."). Therefore, the Court should find the adequacy requirements satisfied.

### B. Arm's-Length Negotiations

The parties engaged in arm's-length negotiation to reach the proposed settlement. Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable").

The record in this case overwhelmingly supports the conclusion that the non-reversionary settlement was negotiated at arm's length, as the Court witnessed first-hand through its involvement in mediation. *See* Markovits Preliminary Approval Decl., Doc. 257-2 ¶ 7; Markovits Fee Decl., Doc. 260-1 ¶ 5; *see also* Doc. 259 at PageID# 10919 ("[P]erhaps even more to the point, the settlement process itself was time-consuming and hard fought. Based on its first-hand involvement in those efforts, the Court has no concerns that the settlement here was in any way collusive."). Nothing has changed since the Court's preliminary approval order to indicate otherwise. *Cf. Todd S. Elwert, Inc. DC v. All. Healthcare Servs., Inc.*, Nos. 5:15-cv-2223, 3:15-cv-

2673, 2018 WL 4539287, at *2 (S.D. Ohio Sept. 21, 2018) ("[C]ourts presume the absence of fraud or collusion unless there is evidence to the contrary.") (citation omitted). Therefore, the Court should conclude that the Settlement Agreement in this case was reached at arm's length.

### C. Adequacy of Relief

Rule 23(e)(2)(C) asks whether "the relief provided for the class is adequate." "To assess the adequacy of relief, the Court considers: (1) 'the costs, risks and delay of trial and appeal'; (2) 'the effectiveness of any proposed method of distributing relief to the class'; and (3) 'the terms of any proposed award of attorney's fees.'" *In re Cinfed*, 2025 WL 1637686, at *9 (quoting Fed. R. Civ. P. 23(e)(2)(C)); *Carmen v. Health Carousel, LLC*, No. 1:20-CV-313, 2025 WL 892586, at *12 (S.D. Ohio Mar. 24, 2025) (same).[7]

#### 1. Costs, Risks and Delay of Trial and Appeal

First, the adequacy of the settlement's proposed relief (which is substantial, likely providing thousands of dollars to each valid claimant) "far outweighs the potential costs and risks of continued litigation." *In re Cinfed*, 2025 WL 1637686, at *9. The litigation in this case has already been protracted, and "the parties have engaged in extensive discovery and mediation at considerable expense." Doc. 259 at PageID# 10920. The issues in this case are also particularly complex. *See id.* (discussing the complexity of litigating a civil RICO claim, in addition to a state law claim for breach of fiduciary duty). And even if Plaintiffs had prevailed at trial, there was substantial risk that the remaining Defendants would not be collectible. *See id.* ("[B]eyond the typical litigation risks, there were also substantial collectability risks in connection with any

---

[7] There are no agreements between the parties (other than the Settlement Agreement and Amended Settlement Agreement). *See* Markovits Decl. ¶ 3. Therefore, the fourth adequacy-of-relief prong is inapplicable. *See In re Cinfed*, 2025 WL 1637686, at *9 n.9 (citing Fed. R. Civ. P. 23(e)(2)(C)(iv)); *Health Carousel, LLC*, 2025 WL 892586, at *12 n.9.

judgment that Plaintiffs may receive. At least some of the Defendant subgroups had very limited assets, and further litigation would be likely to convert any remaining assets into fees for defense attorneys, rather than monies that could be distributed to class members.").

Although Class Members may have been entitled to greater awards *if* successful in bringing the same claims through individual litigation, the risk and complexity of this case make the settlement a fair compromise. *See Hawes*, 2023 WL 8811499, at *11 (comparing the settlement benefits to what class members may have been entitled to through individual litigation). Accordingly, Class Counsel and Plaintiffs support this Settlement because it provides Class Members with tangible and substantial benefits, avoiding the risk of non-recovery were litigation to continue. *See* Hardin Decl., Doc. 260-3 ¶ 14; Jones Decl., Doc. 260-4 ¶ 10; Hoffman Decl., Doc. 260-5 ¶ 11; Robinson Decl., Doc. 260-6 ¶ 13; Broadnax Decl., Doc. 260-7 ¶ 13; *Gascho v. Global Fitness Holdings*, *LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement"). Therefore, the first part of this analysis is satisfied.[8]

## 2. *Effectiveness of Any Proposed Method of Distributing Relief to the Class*

Second, the method of distributing relief to Class Members is fair and effective. Most of the money that Defendants are required to deposit into the common fund will be paid out to Class Members shortly after final approval. *See* Doc. 259 at PageID# 10906; *see also* Markovits Decl., Ex. 1-A.; Simpluris Decl., ¶¶ 26-32. However, roughly $275,000 will be paid by Gary Bailey over

---

[8] Additionally, the Settlement serves the public's interest by avoiding protracted litigation and freeing up judicial resources, particularly considering the years of contentious litigation and possibility of nonpayment to the Class. *See Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (citation omitted).

the course of twelve years (to the extent that, according to his counsel, Mr. Bailey was unable to refinance his home). *See* Doc. 259 at PageID# 10907-08; Markovits Decl. ¶ 9. True, that is "an atypical arrangement," but one that is "understandable" because Gary Bailey and Build Defendants lack the resources to make a lump sum payment into the settlement fund. *See* Doc. 259 at PageID# 10921-22. If the Court grants Plaintiffs' fee motion (Doc. 260), instead of making miniscule periodic payments to valid claimants, the money from Gary Bailey and the Build Defendants received after the distribution date will instead be paid to Class Counsel, who will bear both the risk of non-payment and the detriment of delayed payment. *See id.* at PageID#10922; *see also* Markovits Fee Decl., Doc. 260-1 ¶¶ 8-11, Ex. 1-A (explaining the time value discount associated with delayed payment and providing relevant calculations).[9]

      For security purposes (given the relatively large amount of each payment per claimant), the Settlement Administrator will distribute benefits through checks via certified mail. Simpluris Decl. ¶ 32. If checks go unclaimed or uncashed, then under the Settlement Agreement, the Settlement Administrator will distribute the remainder funds pro rata to the claimants who successfully cashed their checks. *See* Markovits Decl., Ex. 1-A (Amended S.A.) ¶ 2. It is unlikely that substantial funds (if any) will remain after the initial redistribution, as subsequent payments will only be sent to Class Members who cashed their initial check. However, after the second distribution, the Settlement Agreement provides that remainder funds be distributed to an approved state fund or non-profit cy pres recipient. *Id.* Therefore, the Court should find that the distribution method is adequate because it is designed to securely provide the claimed benefits to valid

---

[9] Plaintiffs request that the Court confirm that all payments received by the Settlement Administrator before Class Members receive their initial distribution shall be included in the Common Fund distributed to Class Members, after appropriate deductions for fees, costs, and expenses as approved by the Court.

claimants shortly after final approval, while providing as little money as possible to a cy pres recipient that must first be approved by the Court.

### 3. *Terms of Any Proposed Award of Attorneys' Fees*

The third factor—terms of any proposed award of attorney's fees—is largely tied into the analysis of the second factor above. Plaintiffs believe that the fees requested in their fee motion (Doc. 260), including the atypical fee distribution method, are reasonable under the circumstances. *See* Markovits Fee Decl., Doc. 260-1 ¶¶ 7-20. But regardless, the Settlement Agreement's terms related to attorneys' fees would not impact the determination on adequacy of relief because the Settlement Agreement itself doesn't require payment of attorneys' fees; it simply says that Class Counsel will seek them, which the Court is free to grant, deny, or modify. *Compare* S.A., Doc. 257-1 at PageID# 10830 ("The award of attorneys' fees and costs, and payment to the Class Representatives are subject to and dependent upon the Court's approval. However, this Settlement is not dependent or conditioned upon the Court's approving Class Counsel's fees and expenses or the Class Representative's Service Award or awarding particular amounts sought by Class Counsel and Class Representatives.") *with In re Cinfed*, 2025 WL 1637686, at *9 (explaining that the fee provision in the settlement agreement did not impact the adequacy of relief even though the Court had concerns about the requested fee); *see also Health Carousel, LLC*, 2025 WL 892586, at *12 ("the terms of any proposed attorneys' fees don't present any bar to final approval of the amended settlement agreement itself. The agreement, after all, doesn't hinge on any specific award of attorneys' fees, referring only to the fact that class counsel might seek fees to be awarded at the Court's discretion out of the common fund."). Therefore, the terms related to attorneys' fees are not a bar to final approval in this case either.

Based on the foregoing, the Court should find that the relief, the method of distributing

relief, and the terms related to attorneys' fees, are adequate and support final approval.

### D. Equitable Treatment Among Class Members

#### 1. *Class Member Relief*

The Settlement Agreement, as amended (Markovits Decl., Ex. 1-A), treats Class Members equitably. "A tiered-claims approach based on the strength of class members' claims, such as one proposed here, is equitable." *In re Cinfed*, 2025 WL 1637686, at *9 (citation omitted). As the Court previously recognized, the formula used to determine claimant benefits in this case "basically assigns to each class member a portion of the Common Fund that reflects their share of the total harm suffered by all class members. In other words, each class member's entitlement under the proposed settlement agreement is directly linked to the financial harm it suffered." Doc. 259 at PageID# 10925. Therefore, instead of the "equal" treatment that was provided in the original Settlement Agreement (Doc. 257-1), the tiered benefit structure is now "equitable." *Compare with Health Carousel, LLC*, 2025 WL 892586, at *12 ("Although the amended settlement agreement doesn't 'treat members strictly *equally*, it does treat them *equitably*'—that is, to the extent it differentiates between class members, it does so on fair and reasonable bases.") (quoting *Hawes*, 2023 WL 8811499, at *12) (emphasis in original).

#### 2. *Plaintiffs' Service Awards*

The requested Class Representative Service Awards do not alter the relevant analysis. As discussed in the fee motion, the requested Service Awards are reasonable given Plaintiffs' extensive service to the Class over the better part of decade. *See* Doc. 260 at PageID# 10946-10949. Furthermore, even if the Court still has concerns about the size of the requested service awards after its review of the fee motion (*see* Doc. 259 at PageID# 10925-26), that would not impact the Court's analysis regarding equitable treatment because the awards are merely

requested—not required. *Compare* S.A., Doc. 257-1 at PageID# 10830 (explaining that the effectiveness of the Settlement Agreement is not conditioned on approval of the requested service awards) *with In re Cinfed*, 2025 WL 1637686, at *9 (explaining that under similar circumstances, the settlement agreement's language on service awards did not impact the equitability analysis).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Paul M. De Marco (0041153)
Terence R. Coates (0085579)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*bmarkovits@msdlegal.com*
*pdemarco@msdlegal.com*
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

and

Christopher P. Finney (0038998)
Casey Taylor (0095966)
**FINNEY LAW FIRM, LLC**
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
Telephone: (513) 943-6665
Facsimile: (513) 943-6669
*chris@finneylawfirm.com*
*casey@finneylawfirm.com*

*Co-Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2025, I served the foregoing upon all parties through their counsel of record by filing it electronically with the Court's CM/ECF system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
